SCHWARTZ v MICHIGAN SUGAR COMPANY

Docket No. 50145. Submitted December 11, 1980, at Lansing.—Decided May 20, 1981. Leave to appeal applied for.

Bruce H. Schwartz was discharged by the Michigan Sugar Company after 28 years of employment. He brought an action for wrongful discharge, alleging that there was an implied contract of employment to continue until he reached age 65 unless discharged for good cause, that his discharge was in retaliation for his effective performance as company safety director and therefore in violation of the Michigan Occupational Safety and Health Act, and that, as a long-term employee, by law he could be discharged for just cause only. The Saginaw Circuit Court, Fred J. Borchard, J., granted summary judgment in favor of the defendant, and plaintiff appeals. *Held:*

1. While rules and understandings promulgated and fostered by an employer may justify a legitimate claim to continued employment, a mere subjective expectancy on the part of an employee will not create such a legitimate claim. Here, the circumstances of the plaintiff's employment, as revealed by his deposition testimony, do not show a common understanding or mutual intent to form a contract of continuing employment. Nor were there any statements of employee policy or procedure which would constitute a contract providing that discharge would be for cause only.

2. The plaintiff's claim that his discharge was in violation of the Occupational Safety and Health Act should have been pursued by review under the provisions of that act. Plaintiff's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 8, 10]73 Am Jur 2d, Summary Judgment §§ 22, 23.

[3, 5, 6, 9] 53 Am Jur 2d, Master and Servant §§ 32, 34.

Employee's arbitrary dismissal as breach of employment contract terminable at will. 62 ALR3d 271.

Validity and duration of contract purporting to be for permanent employement. 60 ALR3d 226.

[4, 5] 17 Am Jur 2d, Contracts § 4.

[7, 12] 2 Am Jur 2d, Administrative Law §§ 595-597.

[11] 53 Am Jur 2d, Master and Servant § 60.

[13] 2 Am Jur 2d, Administrative Law §§ 602, 608.

failure to pursue his administrative remedies precludes judicial review of his claim regarding violation of the act.

3. The Court of Appeals will not adopt the doctrine that every discharge must be in good faith, where the Supreme Court has had a recent opportunity to rule on such a claim and declined to do so.

Affirmed.

BRONSON, P.J., dissented from that portion of the majority opinion regarding the existence of a contract implied in fact. He would hold that plaintiff's allegations that he had been led to believe that he would be discharged for just cause only but that the defendant maliciously discharged him anyway were sufficient as a matter of law to withstand a motion for summary judgment. Judge BRONSON would also hold that reasonable jurors could conclude from all the circumstances that there was an implied contract for continued employment, and that summary judgment on that ground was improper. Judge BRONSON concurred with the majority on the plaintiff's other claims. He would reverse in part, affirm in part, and remand for trial solely on the theory of breach of an implied contract.

OPINION OF THE COURT

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM — COURT RULES.

A motion for summary judgment for failure to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's pleadings; the test is whether the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — GENUINE ISSUE OF FACT — COURT RULES.

A motion for summary judgment based upon the allegation that except as to damages there is no genuine issue of material fact tests the factual sufficiency of the plaintiff's claim; such a motion is to be granted only if it is impossible for the plaintiff's claim to be supported at trial because of a deficiency which cannot be overcome (GCR 1963, 117.2[3]).

3. CONTRACTS — EMPLOYMENT CONTRACTS.

Contracts for permanent employment are generally considered to be indefinite hirings terminable at the will of either party; however, a contract providing that an employee shall be discharged only for cause is enforceable.

4. Contracts — Implied Contracts — Employment Contracts.

A contract is implied in fact where the intention as to such contract is not manifested by direct or explicit words between the parties, but is to be gathered by implication or deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction; thus, rules and understandings promulgated and fostered by an employer may justify a legitimate claim by an employee to continued employment.

5. Contracts — Implied Contracts — Employment Contracts.

A subjective expectancy on the part of an employee that his employment was to be continuing is not sufficient to establish a contract implied in fact for continued employment but for good cause where the circumstances do not show a common understanding or mutual intent to create such a contract.

6. Master and Servant — Employment Contracts — Public Policy.

A termination of employment in contravention of a strong public policy is wrongful and is an exception to the general rule that contracts for permanent employment are terminable at will.

7. Administrative Law — Remedies — Failure to Pursue Remedies.

A plaintiff's failure to proceed with an administrative remedy, prior to seeking judicial review of his grievance, does not make the administrative remedy itself inadequate.

Partial Concurrence and Partial Dissent by Bronson, P.J.

8. Master and Servant — Wrongful Discharge — Summary Judgment.

*A plaintiff's allegations that he had been led to believe that he would be terminated from employment for just cause only but that his employer maliciously discharged him without just cause are sufficient, as a matter of law, to withstand a motion for summary judgment in an action for wrongful discharge from employment.*

9. Contracts — Employment Contracts — Rule of Construction.

*The general rule that contracts for permanent employment are indefinite hirings, terminable at the will of either party, is not a substantive limitation on the enforceability of employment contracts but is merely a rule of construction.*

10. JUDGMENTS — SUMMARY JUDGMENT — EMPLOYMENT CONTRACTS — IMPLIED CONTRACTS.

*Summary judgment was not proper where a plaintiff in an action for wrongful discharge from employment offered deposition testimony from which reasonable jurors could conclude that there was an implied agreement that the plaintiff's employment would be continued except for discharge for good cause.*

11. MASTER AND SERVANT — WRONGFUL DISCHARGE — PUBLIC POLICY.

*Any termination from employment which contravenes a clear public policy is wrongful.*

12. ADMINISTRATIVE LAW — EXHAUSTION OF REMEDIES.

*Generally, litigants must exhaust administrative remedies before resorting to a legal action in the courts of law.*

13. ADMINISTRATIVE LAW — RELATED CLAIMS — LIMITATION OF ACTIONS.

*An employee seeking administrative review of his discharge under the Michigan Occupational Safety and Health Act and who also has other claims arising out of the same transaction should not be barred from raising those claims in a subsequent court action if the administrative procedure is not completed until the applicable statute of limitations has run and the employer was provided with written notification of those claims.*

*Cicinelli, Mossner, Majoros & Alexander, P.C.* (by *Eugene D. Mossner* and *William S. Pearson),* for plaintiff.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Timothy D. Wittlinger),* for defendant.

Before: BRONSON, P.J., and J. H. GILLIS and C. L. BOSMAN,* JJ.

J. H. GILLIS, J. Plaintiff, Bruce H. Schwartz, appeals from a February 13, 1980, order of the Saginaw County Circuit Court granting defendant summary judgment. Plaintiff had alleged that he was wrongfully and unjustly discharged from de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fendant's employ on September 20, 1978, after working for defendant for 28 years.

Plaintiff's complaint can be broken down into three claims. First, he alleges the existence of an implied contract of employment to continue until age 65, absent termination for just cause. Second, plaintiff claims that his discharge was in retaliation for his effective performance as company safety director and that defendant thereby violated the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* Finally, plaintiff argues that, as a long-term employee, by law he could only be discharged for just cause.

Neither defendant's motion nor the subsequent opinion and order specified whether the summary judgment was based on GCR 1963, 117.2(1) or 117.2(3). Although defense counsel argued that plaintiff had failed to "state a claim upon which relief can be granted", the parties and court relied on various depositions and documents recorded with the court. Further, defendant's motion and accompanying memorandum argued that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. The lower court's opinion concluded:

"The court finds that under Michigan law that a contract of employment for an indefinite period, or a contract for permanent employment, is a contract for employment at will, and the employee involved may be terminated by the employer at any time, for any cause, or without cause. The court further finds that if the termination is in retaliation for actions of the employee on the job, or for attempting to 'do too good a job', the cases are uniform that the employer still retains the right to discharge the employee."

Out of necessity, we consider each of plaintiff's

claims under GCR 1963, 117.2(1) and 117.2(3). *Cf.,
Partrich v Muscat,* 84 Mich App 724, 728-729; 270
NW2d 506 (1978).

A motion for summary judgment under GCR
1963, 117.2(1) tests the legal sufficiency of the
plaintiff's pleadings, which for purposes of the
motion are considered to be true. *Weckler v Ber-
rien County Road Comm,* 55 Mich App 7, 9; 222
NW2d 9 (1974). The appropriate test is whether
the plaintiff's claim is so clearly unenforceable as
a matter of law that no factual development can
possibly justify a right to recovery. *Crowther v
Ross Chemical & Manufacturing Co,* 42 Mich App
426, 431; 202 NW2d 577 (1972).

A motion for summary judgment under GCR
1963, 117.2(3) tests the factual sufficiency of the
plaintiff's claim. The court is to consider affidavits,
pleadings, depositions and other documentary evi-
dence submitted by the parties. *Sanders v Clark
Oil Refining Corp,* 57 Mich App 687, 692; 226
NW2d 695 (1975). The court is to give the benefit
of any reasonable doubt to the party opposing the
motion and thereafter grant the motion only if it
is impossible for the claim to be supported at trial
because of a deficiency which cannot be overcome.
*Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d
316 (1973).

Contracts for permanent employment are gener-
ally considered to be indefinite hirings terminable
at the will of either party. *Lynas v Maxwell
Farms,* 279 Mich 684, 687; 273 NW 315 (1937).
Nonetheless, a contract providing that the em-
ployee shall be discharged for cause only is en-
forceable. *Toussaint v Blue Cross & Blue Shield of
Michigan,* 408 Mich 579, 598, 609-610; 292 NW2d
880 (1980). Enforceable contractual rights of this
nature may result from statements of company

policy and procedure. *Id.* For example, in *Toussaint,* the employer's personnel policy manual stated that it was company policy to release employees "for just cause only". *Id.,* 597-598. Moreover, the plaintiff in that case inquired as to job security upon hiring and was told he would remain as long as he did his job. *Id.*

In the instant case, there were no such statements of employee policy or procedure. Plaintiff readily conceded in his deposition that he was never told he would be employed until the age of 65, absent termination for cause. Further, he admitted that his superiors never made statements that would have led him to believe as much. He argues, however, that the circumstances of his employment require that such a contractual agreement be implied in fact.

The requirements for a contract implied in fact were discussed in *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 211-212; 180 NW2d 798 (1970):

"A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. *In re Munro's Estate* (1941), 296 Mich 80. A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. *Miller v Stevens* (1923), 224 Mich 626."

Thus, an employer's conduct and other pertinent circumstances may establish an unwritten "common law" providing the equivalent of a just cause termination policy. Rules and understandings, promulgated and fostered by the employer, may justify a legitimate claim to continued employment.

*Toussaint, supra,* 617-618, quoting *Perry v Sindermann,* 408 US 593, 601-603; 92 S Ct 2694; 33 L Ed 2d 570 (1972). Nonetheless, a mere subjective expectancy on the part of an employee will not create such a legitimate claim. *Perry, supra.*

A review of plaintiff's deposition testimony reveals that his claim of an implied contract for continued employment was based on his own subjective expectancy regarding his relationship with the company. Plaintiff based his belief on the fact that the company was originally a closeknit family operation, not known for its high salaries, with virtually no employee turnover. The company, though it had no established sick leave policy, usually paid sick employees for extended periods of time. Further, literature on the company's pension plan indicated that all employees would be eligible unless the particular employee "was injurious or detrimental to the interests of the company". Plaintiff concluded that it was a "foregone conclusion that if you perform your job competently and are an asset to the company, the natural expectation is that you will continue to be employed by the company".

These circumstances do not evidence a common understanding or mutual intent to contract that employment be continuing but for cause. The pension plan condition does not manifest an employment guarantee, but evidences that pension benefits can be lost through detrimental employee actions. For example, a long-term employee could be precluded from receiving a pension if he took employment with a competing firm. Plaintiff conceded that he attached no independent significance to the brochures. Likewise, although the company paid relatively low salaries, that was not perceived

as a tradeoff for continued employment. Plaintiff indicated that each year a Mr. Rennert would conduct a salary review. In some years plaintiff's salary increase would keep up with the rising cost of living and in other years it would not. In the bad years, Rennert would be apologetic and say that the company was ready to "take off", insinuating that plaintiff had a "terrific future" with the company. However, plaintiff never viewed Rennert's representations as an agreement for continued work but for cause. Rather, he saw Rennert as "a Pollyanna type of fellow that promised you things were going to be better tomorrow".

Plaintiff's deposition testimony made it clear that he felt he could only be discharged for cause not because of any representations or policies promulgated, but because of his own personal belief that an employee doing competent work would be retained as a company asset. Plaintiff considered this "a convenience in almost any company". Such a subjective belief is insufficient to establish a contract implied in fact. Thus, although plaintiff's complaint sufficiently pled a cause of action on this theory, in fact, plaintiff's basis for the claim is not the objective circumstances of his employment, but his own personal view of what the law should be.

Plaintiff's second theory is that he was discharged because of his effective performance as safety director. In effect, plaintiff contends that his rigorous enforcement of MIOSHA regulations precipitated his dismissal.

We agree that a termination in contravention of a strong public policy is wrongful and an exception to the general rule that such employment contracts are terminable at will. *Cf., Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d

385 (1978), *Sventko v The Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). In pertinent part, § 65(1) of MIOSHA, MCL 408.1065(1); MSA 17.50(65)(1) provides:

"A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by this act or has testified or is about to testify in such a proceeding or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

It is apparent that the Legislature intended to protect employees, like plaintiff, allegedly discharged in an employer's attempt to avoid the MIOSHA restrictions. If plaintiff's allegations are correct, his termination contravened the policy evidenced by the subsection.

Nonetheless, plaintiff's action must fail since he declined to pursue the administrative remedies contained in MIOSHA itself[1] prior to resorting to this legal action. *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710, 727-728; 190 NW2d 219 (1971), *School Dist of the City of Benton Harbor v State Tenure Comm,* 372 Mich 270; 126 NW2d 102 (1964). In this instance, the time period for filing a complaint with the Department of Labor has passed. MCL 408.1065(2); MSA 17.50(65)(2). Still, plaintiff's failure to proceed does not make the administrative remedy itself inadequate. *Jamison v Stetson,* 471 F Supp 48, 54-55 (ND NY, 1978). Summary dismissal of plaintiff's second theory was appropriate.

Plaintiff's final theory for recovery is that the law now prohibits discharge for malicious or retal-

---

[1] See MCL 408.1065(2)-(8); MSA 17.50(65)(2)-(8).

iatory reasons, that is, that even when an employment contract is terminable at will any discharge must be in good faith. *Monge v Beebe Rubber Co,* 114 NH 130, 133; 316 A2d 549, 551-552 (1974).

This issue was recently before the Michigan Supreme Court in *Prussing v General Motors Corp,* 403 Mich 366; 269 NW2d 181 (1978), where the Court declined to rule on the specific question. Because we consider such a doctrine a radical departure from the common law and Michigan precedent, we believe that if it is to be judicially mandated that change should come from the Supreme Court. We, therefore, affirm the lower court dismissal of plaintiff's complaint under that theory as well.

Affirmed.

C. L. BOSMAN, J., concurred.

BRONSON, P.J. *(dissenting in part, concurring in part).* This is an appeal by plaintiff from a February 13, 1980, order of the Saginaw County Circuit Court granting summary judgment in favor of defendant. Plaintiff averred in a complaint filed on April 17, 1979, that he was wrongfully and unjustly discharged by defendant after 28 years of service, 11 of these years in the capacity of safety director.

Although not specifying in its order or opinion which subsection of the summary judgment rule it was relying on, the dismissal was apparently based on GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted. Like the majority, however, I believe that plaintiff's claims must be considered under both GCR 1963, 117.2(1) and 117.2(3).

Plaintiff's complaint basically sets forth three different theories. First, he argues that he had an

implied contract with defendant that he would continue to be employed until age 65 and that he could be terminated for just cause only. Second, plaintiff contends that his discharge was in retaliation for performing his job as safety director too well and that his termination violated the Michigan Occupational Safety and Health Act (hereinafter MIOSHA), MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* Third, plaintiff contends that the common-law rule concerning the termination of long-term employees has been altered in Michigan and that, due solely to his substantial longevity with defendant, it is precluded from discharging him except for just cause. Each of these theories will be examined *seriatim* in the three portions of this opinion.

I

In *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937), the Supreme Court held:

"Contracts for permanent employment or for life have been construed by the courts on many occasions. In general it may be said that in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, such contracts are indefinite hirings, terminable at the will of either party."

Accord, *Hernden v Consumers Power Co,* 72 Mich App 349, 356; 249 NW2d 419 (1976), *Milligan v The Union Corp,* 87 Mich App 179, 182; 274 NW2d 10 (1978), *Rowe v Noren Pattern & Foundry Co,* 91 Mich App 254, 258; 283 NW2d 713 (1979), *lv den* 409 Mich 880 (1980), *Clink v Board of County Road Comm'rs of Livingston County,* 96 Mich App 524, 530; 294 NW2d 209 (1980).

In the instant case, plaintiff alleged that he had

been led to believe that he would be terminated for just cause only, but that defendant maliciously discharged him anyway. As a matter of law, these allegations were sufficient to withstand a motion for summary judgment. In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579, 598-599; 292 NW2d 880 (1980), the Supreme Court held that a provision in a contract providing that the employee shall not be discharged except for cause is legally enforceable. Moreover, even absent express written or oral agreement to discharge only for cause, statements concerning company policy or procedure which lead the employee to legitimately conclude he will only be fired for cause constitute enforceable contractual provisions. The Court further stated that the rule from *Lynas,* quoted above, does not constitute a substantive limitation on the enforceability of employment contracts but is merely a rule of construction. *Id.,* 597.

The Court in *Toussaint* also made it clear that the plaintiff's own testimony that it was company policy not to discharge an employee as long as he did his job was sufficient to create a jury question. *Id.,* 603. In *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), this Court held that even a written employment agreement in which plaintiff acknowledged he could be terminated at any time without advance notice did not necessarily bar an action under the *Toussaint* doctrine where oral representations and employer's manuals assured the employee that dismissal would be for cause only.

Defendant's position, however, is that even if summary judgment were not proper pursuant to GCR 1963, 117.2(1), it was nevertheless appropriate based on GCR 1963, 117.2(3), no genuine issue

as to any material fact. In passing on a motion under this subsection of the summary judgment rule, we may consider the pleadings, affidavits, admissions, and any documentary evidence which has been filed. *Rizzo v Kretschmer,* 389 Mich 363, 373; 207 NW2d 316 (1973).

Plaintiff gave extensive deposition testimony in this matter. He stated that when he first started with defendant, the company was family owned, had virtually no turnover, and it was tacitly understood that any employee would be retained until age 65. Plaintiff indicated that this benefit was a trade-off for the relatively low wages defendant paid. He also stated that the company went to great lengths to retain employees. For instance, sick employees would be paid their salaries for years even though they could not work. Plaintiff further indicated that one of his superiors implied that he had a terrific future with the company. Plaintiff also claimed to rely on written statements of the company in regard to pension plans. These statements indicated all employees would be eligible for a plan unless the employee "was injurious or detrimental to the interests of the company". Plaintiff also testified that the general employment practices he had observed defendant pursue over the years led him to believe that if one performed his job capably one would not be let go until age 65. He had been told on several occasions that he was doing a good job. He further stated that he had given up more lucrative offers of employment in 1950 following defendant's decision to hire him.

While plaintiff admitted nobody with defendant ever told him he would be employed until age 65 as long as he did his job well, he was led to believe this by the company's actions. A major factor in

this belief was defendant's distribution of information concerning retirement plans. Moreover, plaintiff's superior for many years, a Mr. Rennert, made statements to him leading him to believe he would be with the company until age 65, if he desired. Each year Rennert would perform an annual salary review in respect to plaintiff's compensation. Rennert was "always somewhat apologetic" for the fact that the salary increase could not be more. Consequently, he would tell plaintiff the various perquisites he could expect, would emphasize the good prospects for the company's future, and implied that plaintiff "would be moving up" with the company.

Based on this testimony, it is clear that no express agreement existed between plaintiff and defendant that plaintiff would not be discharged prior to age 65 except for good cause. However, as noted previously, an agreement not to discharge may also be premised on an employer's procedures and policy statements. Although plaintiff's case does not impress me as overwhelming based on his deposition testimony, it did, nonetheless, provide sufficient factual support for his contention that he was terminable before age 65 only for good cause. The Court in *Toussaint, supra,* 617-618, quoted with approval the following excerpt from *Perry v Sindermann,* 408 US 593, 601-603; 92 S Ct 2694; 33 L Ed 2d 570 (1972), in rendering its decision:

" 'A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long

has employed a process by which agreements, though not formalized in writing, may be "implied". Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in the light of the surrounding circumstances." And, "[t]he meaning of [the promisor's] words and acts is found by relating them to the usage of the past."

" 'A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement, so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university, like Odessa Junior College, that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice.

" 'In this case, the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent "sufficient cause." ' (Citations omitted.)"

I disagree with the majority's analysis of plaintiff's deposition testimony. I believe that reasonable jurors could conclude from all the surrounding circumstances that there was an implied agreement that plaintiff's employment would be continued except for discharge for good cause. First, the jury might find from plaintiff's testimony concerning the defendant's employer's practices, for instance that employees were paid even while sick over extensive periods of time, that dismissal only for cause was the "common law" in defendant's business. Second, the jury might find that the information concerning retirement plans

circulated by defendant evinced an intent not to dismiss employees except for good cause. Third, the jury might find that the company's agents made statements to plaintiff impliedly recognizing a policy that he would remain with the company unless discharged for good cause. From all the circumstances of his service, plaintiff might be able to make out "a legitimate claim of entitlement to job tenure". Compare, *Clink, supra* (V. J. BRENNAN, J., dissenting).

Even assuming that plaintiff can make out a case that the terms of his contract with defendant precludes discharge except for good cause, it still must be ascertained if plaintiff has sufficiently pled that his dismissal was unjust. Plaintiff apparently concedes that defendant had lost money during the year of his discharge. However, this is not dispositive. Plaintiff also pled in his complaint and stated in his deposition that his termination was due to the rigorous nature of his safety program. Plaintiff conceded that saving his salary was also a reason for his discharge. However, he denies that his termination was actually occasioned by the monetary losses and a genuine desire to save money by reducing personnel. Plaintiff further notes that he was the sole employee dismissed for the ostensible purpose of economizing. In *Toussaint, supra,* 622, the Supreme Court held that the jury is permitted to ascertain the true reason for the employee's discharge. On the facts as pled, a jury hearing this case could conclude that defendant's legitimate financial worries were merely a convenient excuse to ascribe to plaintiff's firing and that the real reason was for some improper purpose such as weakening the company's safety program. As such, this cause should have been submitted to a jury.

## II

I now turn to a consideration of whether plaintiff's claim that he was discharged for doing his job as safety director "too well" states a legally cognizable cause of action. Where an employee's discharge would contravene a strong public policy, this Court has recognized an exception to the general rule that employment contracts for an indefinite term are terminable at will. Thus, in *Sventko v The Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976), this Court held that the discharge of an employee in retaliation for her filing a lawful workers' compensation claim was inconsistent with the public policy of this state and constituted a wrongful dismissal. See, also, *Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978), *lv den* 403 Mich 855 (1978) (complaint alleging that plaintiff's employment was terminated for his refusal to alter pollution control reports required by the state stated a cause of action upon which relief could be granted).

Defendant contends that the public policy exception to the rule that employment contracts for an indefinite term are terminable at will applies to only two situations: (1) where the employee alleges that his employer attempted to force him to commit an unlawful act or (2) where the employee has been fired for claiming some benefit he is legally entitled to claim. I disagree with this analysis and hold that any termination which contravenes a clear public policy is wrongful. MIOSHA mandates the regulation of working conditions with an eye toward safety. MCL 408.1065(1); MSA 17.50(65)(1) provides:

"A person shall not discharge an employee or in any manner discriminate against an employee because the

employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by this act or has testified or is about to testify in such a proceeding *or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."* (Emphasis added.)

In my opinion the emphasized portion of the provision quoted above manifests an intent to protect from discharge employees in the position in which plaintiff alleges he finds himself. To the extent that plaintiff can prove he was fired for his rigorous enforcement of MIOSHA regulations, this provision prohibits his dismissal.[1]

Defendant further argues that even if the above interpretation of MCL 408.1065(1); MSA 17.50(65)(1) is correct, plaintiff's action must fail because he has failed to exhaust his administrative remedies. An administrative review procedure is set forth in MCL 408.1065(2)-(8); MSA 17.50(65)(2)-(8). As a general rule, litigants must exhaust administrative remedies before resorting to a legal action in the courts of law. *School Dist of the City of Benton Harbor v State Tenure Comm,* 372 Mich 270; 126 NW2d 102 (1964), *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710, 727-728; 190 NW2d 219 (1971). In the instant case, none of the traditional exceptions to this rule are applicable.[2]

---

[1] To succeed on this theory, plaintiff would have to prove that his firing was occasioned by a management decision not to comply with some portion of MIOSHA or other safety regulations which he had previously sought to enforce. A mere disagreement over the manner or status of safety regulation inside the company is insufficient to support this theory. Plaintiff must also show that safety regulations which he formerly enforced are not being enforced or that the company is not in compliance with safety regulations it formerly complied with.

[2] The two generally recognized exceptions to the exhaustion requirement are where a constitutional issue is raised which the administrative agency has no power to adjudicate, *Diggs v State Board of*

Plaintiff's various theories of wrongful discharge are claims which arise out of one transaction or occurrence that is the subject matter of the suit and, thus, must be joined. GCR 1963, 203.1. However, only one of the claims for relief requires exhaustion prior to the institution of suit. Thus, plaintiff may believe he is left with two unattractive alternatives—exhausting his administrative remedies on the safety claim and holding his other claims in abeyance, thereby risking the possibility that the applicable statute of limitations on these claims will run, or bringing an immediate action in court on his other claims while exhausting his remedies on the safety claim and thereby subjecting himself to the argument that he has failed to join compulsory claims. I would hold, however, that, where an employee brings a claim of wrongful discharge for administrative review under MIOSHA and he has other claims arising out of the same transaction, if the employer is provided with written notification of these claims, they will not be barred in a subsequent court action if the administrative procedure is not completed until the applicable statute of limitations has run.[3] Compare, *Oak Construction Co v Dep't of State Highways,* 33 Mich App 561, 565-566; 190 NW2d 296 (1971).

Unfortunately for plaintiff, the time period in which he should have filed a complaint with the Department of Labor on the MIOSHA claim has now passed. However, an administrative remedy is not inadequate simply because a litigant fails to

*Embalmers & Funeral Directors,* 321 Mich 508; 32 NW2d 728 (1948), and where the available administrative remedy is inadequate so that requiring exhaustion would be a futile gesture, *Schwall v City of Dearborn,* 31 Mich App 169; 187 NW2d 543 (1971).

[3] Another means of resolving this problem is for the employee to get the employer to waive his right to have all claims arising out of the same transaction joined for purposes of trial.

invoke it in a timely fashion. *Jamison v Stetson,* 471 F Supp 48, 54-55 (ND NY, 1978). Thus, the trial court's summary dismissal of this theory was correct on the facts of this case.

## III

Plaintiff lastly contends we should hold that all employment contracts terminable at will include as a covenant of the contract an obligation in the employer to discharge employees in good faith only and that it is improper to discharge for malicious or retaliatory reasons. At least one state has gone this far. In *Monge v Beebe Rubber Co,* 114 NH 130, 133; 316 A2d 549, 551-552 (1974), the New Hampshire Supreme Court stated:

"In all employment contracts, whether at will or for a definite term, the employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two. (Citation omitted.) We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. (Citations omitted.) Such a rule affords the employee a certain stability of employment and does not interfere with the employer's normal exercise of his right to discharge, which is necessary to permit him to operate his business efficiently and profitably."

The Michigan Supreme Court had occasion to consider *Monge* in *Prussing v General Motors Corp,* 403 Mich 366; 269 NW2d 181 (1978). However, it declined to commit itself on the issue of whether an employee could be discharged without cause. Instead, the Court found for defendant

based on a technical problem with an affidavit filed by the plaintiff.

It would constitute a radical departure from the common law and Michigan precedent for us to hold that an employee can be discharged for good cause only. While I believe the rule is sound— particularly in respect to long-term employees—if this change is to be judicially mandated, it will have to come from our Supreme Court.

I would reverse in part, affirm in part, and remand. The trial in this cause would proceed solely on plaintiff's theory that the discharge violated an implied contractual covenant that he could only be discharged for cause, and this covenant was breached.[4]

---

[4] I do not mean that defendant's assertion that he was fired for rigorously enforcing MIOSHA is totally irrelevant but that this claim is not actionable in and of itself. For plaintiff to prevail under my opinion he would first have to establish an implied contractual provision that he would be dismissed for just cause only. He would also have to establish that his dishcarge was wrongful, that is, not for just cause. Evidence tending to show that he was fired for his exacting adherence to MIOSHA requirements is admissible to establish the wrongful discharge aspect of the cause. This evidentiary use of the MIOSHA claim is different than allowing the jury to find for plaintiff solely because it concludes that he was fired for his efforts to enforce safety regulations.