*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLEVELAND STEGALL,

Plaintiff-Appellant,

v

RESOURCE TECHNOLOGY CORPORATION,
doing business as BRIGHTWING, and FCA US,
LLC,

Defendants-Appellees.

FOR PUBLICATION
February 2, 2023
9:10 a.m.

No. 341197
Oakland Circuit Court
LC No. 2016-155043-CD

ON REMAND

Before: JANSEN, P.J., GLEICHER, C.J., and BORRELLO, J.

JANSEN, P.J.

This case returns to this Court on remand from our Supreme Court. Plaintiff filed this action asserting a claim under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and a claim that he was discharged in violation of public policy, in regard to his perception of an issue regarding asbestos insulation at his worksite. The trial court granted summary disposition to defendants, Resource Technology Corporation, doing business as Brightwing, and FCA US, LLC, under MCR 2.116(C)(10). In an unpublished opinion, a majority of this panel affirmed. *Stegall v Resource Technology Corp*, unpublished per curiam opinion of the Court of Appeals, issued September 24, 2019 (Docket No. 341197) (*Stegall I*), rev'd in part & remanded, lv den in part 976 NW2d 667 (Mich, 2022). Our Supreme Court has now reversed in part this Court's judgment and remanded for further consideration of plaintiff's public-policy claim. *Stegall v Resource Technology Corp*, 976 NW2d 667 (Mich, 2022) (*Stegall II*). On remand, this Court is directed to further consider "whether plaintiff has established a prima facie claim that he was discharged in violation of public policy, whether plaintiff's public-policy claim is nonetheless preempted by either state or federal law, and whether arguments that the claim has been preempted are preserved." *Id*. at 668. Our Supreme Court denied leave to appeal in all other respects. *Id*.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In *Stegall I*, the majority of this panel summarized the underling facts and procedural history of this case as follows:

In 2013, FCA employed information technology (IT) support persons at its Sterling Heights Assembly Plant (SHAP) on both first and second shift. FCA employed some IT support persons directly; others were hired through staffing agencies as contract workers. Plaintiff began working at SHAP through Brightwing, a staffing agency. In April 2016, plaintiff complained to his superiors about what he perceived to be an issue with asbestos insulation in one of his work areas in the plant. Plaintiff e-mailed photographs of the suspected problem area to his supervisor, and plaintiff's supervisor sent the photographs to the plant's health and safety manager. The safety manager consulted with an outside expert who determined that there was no asbestos issue.

Around May 2016, FCA formally announced that it was ending production of the Chrysler 200 sedan, and that the second shift at SHAP would be eliminated. In light of this announcement, on June 3, 2016, Rick Spondike, plaintiff's superior, sent an e-mail to human resources personnel at FCA indicating that on June 17, 2016, he planned to transfer two of plaintiff's coworkers to another FCA plant and that plaintiff would be released.

Following plaintiff's termination, Kerri Kacanowski, a manager at Brightwing, instructed plaintiff to update his résumé and informed plaintiff that Brightwing would search for a new employment opportunity for him. Then, on July 6, 2016, plaintiff filed a discrimination complaint with the Michigan Occupational Safety and Health Administration (MiOSHA), naming defendants in the complaint. Subsequently, Brightwing sent plaintiff an "Offboarding Survey" on two separate occasions and Brightwing's 401(k) provider, Principal Bank, sent plaintiff a letter indicating that his "former employer" had closed his 401(k) account.

Plaintiff then commenced this lawsuit, alleging that FCA and Brightwing were his joint employers and that both employers violated the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. Plaintiff alleged that he was terminated because he was "about to report Defendants' violations of the law." Plaintiff, however, later withdrew his WPA claim against FCA. Plaintiff also alleged that both alleged employers violated public policy by discharging him. Ultimately, the trial court granted summary disposition under MCR 2.116(C)(10) in favor of both defendants and dismissing plaintiff's complaint in its entirety. This appeal followed. [*Stegall I*, unpub op at 1-2.]

On appeal, the majority of this panel rejected plaintiff's argument that the trial court had erred in granting summary disposition to defendants regarding the public-policy claim. *Id*. at 2. Plaintiff's public-policy claim asserted that defendants, his joint employers, had "wrongfully terminated him because of his failure or refusal to violate the law in the course of his employment

at SHAP." *Id*. at 3. That is, plaintiff contended that "his complaint about potential problems with asbestos at the plant and his demand for safety equipment amounted to a 'refusal to violate a law' while he was at SHAP and that FCA and Brightwing terminated him as a result." *Id*. The majority disagreed because (1) "there is no Michigan caselaw extending the public policy exception to discharges in retaliation for internal reporting of alleged violations of the law"[1] and (2) "there was no genuine issue of material fact to support that either FCA or Brightwing wrongfully terminated plaintiff in retaliation for his refusal to violate the law because there is no evidence that anyone actually violated any law or regulation." *Id*. Given its resolution of this issue, the majority determined that there was no need to address plaintiff's argument that the trial court had "erred in holding that his public policy claims were preempted by the WPA." *Id*. at 3 n 1.

Next, the majority rejected plaintiff's argument that the trial court had erred by dismissing his WPA claim against Brightwing. *Id*. at 4. The majority stated it was undisputed that plaintiff engaged in protected activity under the WPA by filing a wrongful termination complaint with MiOSHA. *Id*. at 5. Also, given the letters sent to plaintiff, a reasonable jury could find that Brightwing terminated its relationship with plaintiff, which would amount to an adverse employment action. *Id*. But plaintiff had failed to establish a causal connection between his protected activity and the adverse employment action because more than a mere temporal relationship is required to establish a causal connection. *Id*. at 5.[2]

Following the issuance of this panel's opinion affirming the grant of summary disposition to defendants, plaintiff filed an application for leave to appeal in our Supreme Court. On November 29, 2021, the Court entered an order directing that oral argument was to be held on the application and that the parties were to file supplemental briefs addressing whether this Court had erred in holding that defendants were entitled to summary disposition on the public-policy claim. *Stegall v Resource Technology Corp*, 508 Mich 986 (2021). The parties filed supplemental briefs, and oral argument was held.

---

[1] The public-policy claim was based on plaintiff's internal reporting regarding the purported asbestos issue, not on the MiOSHA complaint. The MiOSHA complaint is pertinent only to the WPA claim against Brightwing. Plaintiff withdrew his WPA claim against FCA because FCA decided to end plaintiff's employment before he expressed any intention to file a MiOSHA complaint.

[2] Judge Gleicher dissented with respect to both the public-policy claim and the WPA claim. *Id*. at 1 (GLEICHER, J., dissenting). Judge Gleicher opined that the majority was incorrect to state that a public-policy claim may not proceed on the basis of internal reports, relying on *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519; 854 NW2d 152 (2014). *Stegall I*, unpub op at 5 (GLEICHER, J., dissenting). Judge Gleicher further stated that it was irrelevant to plaintiff's public-policy claim whether a law was actually broken. *Id*. at 6. Moreover, Judge Gleicher believed that plaintiff set forth a prima facie case under a public-policy tort theory. *Id*. at 6-7. As for the WPA claim, Judge Gleicher cited *Mickey v Zeidler Tool & Die Co*, 516 F3d 516, 525 (CA 6, 2008), and *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 661; 653 NW2d 625 (2002), for the proposition that temporal proximity alone can suffice to establish causation in certain cases. *Stegall I*, unpub op at 7-8 (GLEICHER, J., dissenting).

On July 15, 2022, the Supreme Court entered its order reversing in part this Court's judgment and remanding the case to this Court for further consideration of plaintiff's public-policy claim. *Stegall II*, 976 NW2d at 667. The Court stated that this Court had

> erred by holding that plaintiff's public-policy claim fails because the public-policy exception does not extend to discharges in retaliation for internal reporting of alleged violations of the law. In this case, plaintiff did not argue for an addition to the public-policy exceptions that are recognized in *Suchodolski v Mich Consol Gas Co*, 412 Mich 692; 316 NW2d 710 (1982). Instead, plaintiff grounds his claim on two of the well-recognized *Suchodolski* exceptions—that he was discharged both because he exercised a right conferred by well-established legislative enactment and because he failed or refused to violate the law. *Suchodolski*, 412 Mich at 695-696. It bears noting that these are two separate exceptions under *Suchodolski*. It is irrelevant to the former exception whether plaintiff reported an actual or alleged violation of the law; that plaintiff relies on the exercise of a right conferred by a well-established legislative enactment such as the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq*., is sufficient. The Court of Appeals majority erred by considering the requirements of the two *Suchodolski* exceptions together. [*Stegall II*, 976 NW2d at 667-668.]

Our Supreme Court further explained why it is improper to preclude a public-policy claim merely because it is asserted on the basis of only internal reports:

> To the extent that the Court of Appeals majority held that a public-policy claim fails when only internal reports are made, the Court of Appeals has previously held that a plaintiff could support a public-policy claim on the basis of internal reporting. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 531-532; 854 NW2d 152 (2014). We see no reason why limiting public-policy claims to external reports would serve the welfare of the people of Michigan, especially where the Whistleblowers' Protection Act, MCL 15.361 *et seq*., might otherwise preempt claims that involve reports to public bodies. See MCL 15.362; *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011). In this case, plaintiff had a good-faith belief that there was a violation of asbestos regulations at his workplace and followed proper internal reporting procedures. His internal report was thus sufficient to state a public-policy claim. [*Stegall II*, 976 NW2d at 668.]

In a footnote of its order, the Court addressed a dissenting statement written by Justice Zahra and joined by Justice Viviano:

> We do not take a position on whether there remains a genuine issue of material fact regarding plaintiff's public-policy claim, although we do note that some of the facts the dissent relies upon remain disputed. Because the Court of Appeals erred by concluding that internal reports could not support a public-policy claim and by conflating plaintiff's claims made under separate *Suchodolski* exceptions, we remand to the Court of Appeals for that court to consider the remaining issues in the first instance. However, the dissent forges ahead to prematurely reject plaintiff's claims. Specifically, the dissent relies on *Dudewicz v*

*Norris-Schmid, Inc*, 443 Mich 68; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589, 594 n 2; 734 NW2d 514 (2007), to conclude that plaintiff's claims are preempted by the OSHA and the Michigan Occupational Safety and Health Act (MiOSHA), MCL 408.1001 *et seq*. This ignores the fact that these specific preemption arguments were raised for the very first time in this Court and were thus never addressed by the Court of Appeals. We also note that, in *Suchodolski* itself, this Court cited MiOSHA as a potential source of a right conferred by well-established legislative enactment. *Suchodolski*, 412 Mich at 695 & n 2. It is unclear what impact *Dudewicz* has on MiOSHA preemption given this language in *Suchodolski* that specifically refers to MiOSHA in explaining the contours of this exception, and the dissent fails to note or address this tension. We continue to believe that these questions are more appropriately addressed by the Court of Appeals in the first instance. [*Stegall II*, 976 NW2d at 668 n 1.]

The Court's order then announced the following disposition:

We remand this case to the Court of Appeals for further consideration of whether plaintiff has established a prima facie claim that he was discharged in violation of public policy, whether plaintiff's public-policy claim is nonetheless preempted by either state or federal law, and whether arguments that the claim has been preempted are preserved. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Stegall II*, 976 NW2d at 668[3].]

## II. ANALYSIS

In general, an issue must have been raised in or decided by the trial court to be preserved for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). The issue whether plaintiff's public-policy claim is preempted by OSHA or MiOSHA was not raised or decided below. As the Supreme Court majority noted, those preemption arguments—which defendants are asserting as essentially alternative grounds for affirmance—were raised for the first time in the Supreme Court. *Stegall II*, 976 NW2d at 668 n 1. Our Supreme Court has explained:

---

[3] Justice Cavanagh concurred in the remand of the case to this Court for further consideration of the public-policy claim but dissented from the denial of leave to appeal with respect to the WPA claim. *Id*. at 668-669 (Cavanagh, J., concurring in part and dissenting in part). Justice Zahra wrote a dissenting statement that was joined by Justice Viviano. *Id*. at 669-673 (Zahra, J., dissenting). Justice Zahra opined that plaintiff's public-policy claim was preempted by MiOSHA and/or OSHA and that the public-policy exceptions to at-will employment that plaintiff invoked under *Suchodolski* were inapplicable. *Id*. at 669. Justice Zahra would thus have denied leave to appeal. *Id*.

-5-

Michigan generally follows the "raise or waive" rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a failure to timely raise an issue waives review of that issue on appeal. [*Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citations omitted).]

This issue was not preserved for appellate review. However, "[t]his Court . . . has the power to consider an issue when necessary, even if unpreserved or not properly presented." *Glasker-Davis*, 333 Mich App at 228. "[T]his Court may overlook preservation requirements where failure to consider the issue would result in manifest injustice, if consideration of the issue is necessary to a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002) (citations omitted). Thus, this Court may nonetheless consider the issue of whether plaintiff's public-policy claim is preempted by OSHA and MiOSHA.

In *Suchodolski*, 412 Mich at 695, our Supreme Court recognized a public-policy exception to the general rule that an employment-at-will contract may be terminated by either party to the employment contract at any time for any or no reason. This public-policy exception is "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. Our Supreme Court noted that "[m]ost often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id*. As examples of such explicit legislative statements, the Supreme Court referred to, *inter alia*, MiOSHA and the WPA. *Id*. at 695 n 2.

The *Suchodolski* Court then noted that "courts have also occasionally found sufficient legislative expression of policy to imply a cause of action for wrongful termination even in the absence of an explicit prohibition on retaliatory discharges." *Id*. at 695. Such a cause of action may be implied when "the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id*. "In addition, the courts have found implied a prohibition on retaliatory discharges when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment." *Id*. at 695-696. This latter type of implied cause of action has been recognized when there is an allegation of being discharged in retaliation for pursuing a worker's compensation claim. *Id*. at 696.

In *Dudewicz*, 443 Mich at 79-80, our Supreme Court explained:

In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim. . . . *A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue*. [Emphasis added.]

The *Dudewicz* Court held that the WPA preempted the public-policy claim asserted in that case because the WPA contained a specific prohibition against retaliatory discharge. *Id*. at 78-80.

This Court has adhered to the preemption analysis of *Dudewicz*. See, e.g., *Anzaldua*, 292 Mich App at 631 ("The WPA provides the exclusive remedy for such retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity."), citing *Dudewicz*, 443 Mich at 70, 78-79; *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008) ("[W]here there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other 'public policy' claim for wrongful discharge can be maintained."), citing *Dudewicz*, 443 Mich at 78-80.

MiOSHA and OSHA both prohibit retaliatory discharge and thus preempt plaintiff's public-policy claim. MiOSHA imposes multiple duties on employers, including a duty to "[f]urnish to each employee, employment and a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." MCL 408.1011(a). MCL 408.1065(1) states:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by this act or has testified or is about to testify in such a proceeding or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

MCL 408.1065(2) provides:

> An employee who believes that he or she was discharged or otherwise discriminated against by a person in violation of this section may file a complaint with the department of labor alleging the discrimination within 30 days after the violation occurs. Upon receipt of the complaint, the department of labor shall cause an investigation to be made as it considers appropriate. If, upon the investigation, the department determines that this section was violated, the department shall order all appropriate relief, including rehiring or reinstatement of an employee to his or her former position with back pay.

Similarly, OSHA provides that an employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 USC 654(a)(1). An employer also is required by OSHA to "comply with occupational safety and health standards promulgated under this chapter." 29 USC 654(a)(2). And like MiOSHA, OSHA proscribes retaliatory discharge. In particular, 29 USC 660(c)(1) states:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

And 29 USC 660(c)(2) provides:

-7-

Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

Therefore, MiOSHA and OSHA both prohibit retaliatory discharge, and plaintiff's public-policy claim is preempted under *Dudewicz* .

In our Supreme Court, plaintiff suggested that there was not an adequate statutory remedy, given that the Secretary of Labor has discretion in deciding whether to bring an action under OSHA. It is true that the OSHA antiretaliation provision did not create a private cause of action for a discharged employee. *Taylor v Brighton Corp*, 616 F2d 256, 264 (CA 6, 1980). But an assessment of the adequacy of a statutory remedy is not part of the preemption analysis under *Dudewicz*. Plaintiff relies on language in *Pompey v Gen Motors Corp*, 385 Mich 537, 552 n 14; 189 NW2d 243 (1971), stating that a "statutory remedy is not deemed exclusive if such remedy is plainly inadequate," but our Supreme Court later explained in *Lash v Traverse City*, 479 Mich 180, 192 n 19; 735 NW2d 628 (2007), that the statement in *Pompey* regarding adequacy was dictum and "that this principle, which has never since been cited in any majority opinion of this Court, appears inconsistent with subsequent caselaw." The Supreme Court in *Lash* cited caselaw issued after *Pompey*, including *White v Chrysler Corp*, 421 Mich 192, 206; 364 NW2d 619 (1984), and noted that the Court in *White* had "refused to permit a tort remedy for violations of [MiOSHA] despite acknowledging that the statutory remedy was inadequate because it resulted 'in the undercompensation of many seriously injured workers.' " *Lash*, 479 Mich at 192 n 19, quoting *White*, 421 Mich at 206.

This Court's opinion in *Ohlsen v DST Indus, Inc*, 111 Mich App 580; 314 NW2d 699 (1981), further reinforces the conclusion that plaintiff's public-policy claim is preempted. In *Ohlsen*, this Court held that, when an employer discharges an employee because of the employee's exercise of a right afforded by MiOSHA, the remedy provided in the MiOSHA antiretaliation provision is exclusive. *Id*. at 584, citing *Schwartz v Mich Sugar Co*, 106 Mich App 471; 308 NW2d 459 (1981). Because MiOSHA prohibits retaliatory discharges and provides an exclusive remedy, the plaintiff in *Ohlsen* could not pursue a common-law tort action regarding the alleged retaliatory discharge of him. *Ohlsen*, 111 Mich App at 584-586. Our Supreme Court in *Dudewicz* cited *Ohlsen* along with other caselaw as support for the holding in *Dudewicz* that "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz*, 443 Mich at 80.

In addressing Justice Zahra's preemption analysis, the Supreme Court majority in this case stated that, in *Suchodolski*, "this Court cited MiOSHA as a potential source of a right conferred by

well-established legislative enactment." *Stegall II*, 976 NW2d at 668 n 1, citing *Suchodolski*, 412 Mich at 695 & n 2. The Supreme Court majority in this case continued:

> It is unclear what impact *Dudewicz* has on MiOSHA preemption given this language in *Suchodolski* that specifically refers to MiOSHA in explaining the contours of this exception, and the dissent fails to note or address this tension. We continue to believe that these questions are more appropriately addressed by the Court of Appeals in the first instance. [*Stegall II*, 976 NW2d at 668 n 1.]

Respectfully, we feel compelled to note that the Supreme Court majority in this case did not precisely describe the way in which the *Suchodolski* Court referred to MiOSHA. The *Suchodolski* Court referred to, *inter alia*, MiOSHA and the WPA as examples of explicit legislative statements prohibiting retaliatory discharge. *Suchodolski*, 412 Mich at 695 n 2. The *Suchodolski* Court then went on to note that "courts have also occasionally found sufficient legislative expression of policy to imply a cause of action for wrongful termination even in the absence of an explicit prohibition on retaliatory discharges[,]" *id*. at 695, and that such an implied cause of action may exist when, *inter alia*, "the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment." *Id*. at 696. The *Suchodolski* Court did *not*, as the Supreme Court majority in this case seems to have suggested, refer to MiOSHA in the context of the "well-established legislative enactment" exception that may form the basis for an implied cause of action.

Notably, in *Dudewicz*, 443 Mich at 79 & n 6, our Supreme Court accurately summarized the pertinent reasoning in *Suchodolski*, including the fact that the *Suchodolski* Court referred to, *inter alia*, both the WPA and MiOSHA as examples of explicit legislation restricting an employer's ability to terminate an employment-at-will contract. The Court in *Dudewicz* went on to hold that "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Id*. at 80. The *Dudewicz* Court concluded that, because the WPA contained a specific prohibition against retaliatory discharge, the public-policy claim in that case was preempted. *Id*. at 78-80. As explained earlier, the same reasoning applies in this case because OSHA and MiOSHA contain explicit prohibitions against retaliatory discharge. We do not discern any tension in the caselaw that would alter the preemption analysis or the conclusion that plaintiff's public-policy claim is preempted.[4]

Accordingly, summary disposition in favor of defendants is appropriate because plaintiff's public-policy claim is preempted by OSHA and MiOSHA, and the trial court reached the correct result in granting summary disposition to defendants with respect to the public-policy claim. See

---

[4] The Supreme Court majority in this case acknowledged that the WPA "might" preempt public-policy "claims that involve reports to public bodies." *Stegall II*, 976 NW2d at 668, citing MCL 15.362 and *Anzaldua*, 292 Mich App at 631. Given that the *Suchodolski* Court referred to the WPA and MiOSHA *in exactly the same manner*, i.e., as examples of explicit legislation prohibiting retaliatory discharge, it is unclear why the Supreme Court majority in this case says that it discerns "tension" between *Suchodolski* and *Dudewicz* with respect to MiOSHA preemption while noting no such tension with respect to WPA preemption. *Stegall II*, 976 NW2d at 688 n 1.

*Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015) ("We will affirm a trial court's decision on a motion for summary disposition if it reached the correct result, even if our reasoning differs.").[5]

    Affirmed.

                                 /s/ Kathleen Jansen
                                 /s/ Stephen L. Borrello

---

[5] Based on this conclusion, we need not address whether plaintiff established a prima facie claim that he was discharged in violation of public policy.