William E. BROCK,* Secretary of Labor, on Behalf of James W. PARKER and Joe E. Brown, Petitioner Cross-Respondent,

v.

METRIC CONSTRUCTORS, INC., Respondent Cross-Petitioner.

No. 84–3427.

United States Court of Appeals, Eleventh Circuit.

July 23, 1985.

J. Dickson Phillips, III, Charlotte, N.C., for respondent cross-petitioner.

Barry F. Wisor, U.S. Dept. of Labor, Arlington, Va., for petitioner cross-respondent.

---

* The substitution of Secretary of Labor William E. Brock for former Secretary of Labor Raymond J. Donovan is effected by Rule 43(c)(1) of the Federal Rules of Appellate Procedure.

470

L. Joseph Ferrara, Gen. Counsel, Federal Mine Safety and Health Review Comm'n, Washington, D.C., for respondent.

Before FAY and ANDERSON, Circuit Judges, and GIBSON,** Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Both parties appeal an order of the Federal Mine Safety and Health Review Commission ("Commission") determining that defendant Metric Constructors, Inc. ("Metric") violated section 105(c)(1) of the Federal Mine Health and Safety Act of 1977, 30 U.S.C. § 815(c)(1) (1982) ("the Mine Act") by discharging a group of workers ("Complainants"), who refused to work under what they determined to be hazardous conditions. Metric disputes the Commission's finding that it violated section 105(c)(1), while the Secretary of Labor ("Secretary") argues that the Commission erred in denying one Complainant any back pay, and reducing the back pay awarded to another Complainant. We affirm the Commission's order as to both issues.

### Facts

In February 1979, Metric hired Complainants as temporary employees to perform a four-week welding project of repairing a pre-heater and kiln at a cement plant owned by Florida Mining and Materials Corporation, located ten miles north of Brooksville, Florida.[1] The men were scheduled to work a twelve-hour shift between 7:00 p.m. and 7:00 a.m., seven days a week, during the four-week period.

On their first three shifts Complainants welded on and around the kiln. On their fourth shift, March 2, 1979, Complainants were instructed to weld on inlet feed shoots located at the top of the pre-heater, approximately 180 feet above the ground. Because a six to eight foot gap existed between the access stairs and the work platform, Complainants had to be lifted in a basket by a crane to the work platform. On reaching the work site, Complainants found that neither the platform nor the ducts had protective railings, scaffolding, or padeyes on which to hook their safety belts. Complainants thus had to weld padeyes before they could attach their safety belts, constituting their only protection from falling.

Complainants worked for about two hours, during which time they were exposed to heavy winds, welding fire generated from above the work place, and inadequate lighting. Three of the men, on behalf of all seven, then registered their complaints about the work conditions with the night foreman, Bob Davis. The men requested scaffolding, handrails, fire blankets, and adequate lighting. Davis informed the night superintendent, Thelbert Simpson, about the complaints, and Simpson called Russ Jones, the project superintendent, who was not on the site. When Simpson told Jones that Complainants refused to continue working on the pre-heater, Jones asked whether Simpson had any other work for them. Simpson said that he did not, and Jones responded that the Complainants should go home and come back in the morning for their pay. When Simpson and Davis conveyed Jones' position to Complainants, Complainants asked whether they were being fired. Simpson and Davis replied that Complainants were not being fired, but that if they refused to continue welding as before they would have to go home. Complainants understood they were in fact being discharged and left the jobsite, returning only to collect their paychecks.

---

** Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. It is undisputed that Metric is an "operator" as defined in 30 U.S.C. § 802(d), and that Complainants were "miners" as defined in 30 U.S.C. § 802(g).

On behalf of Complainants, the Secretary of Labor filed a discrimination complaint with the Commission against Metric, under section 105(c)(1) of the Mine Act.[2] The complaint alleged that each Complainant had been discharged because he refused to work under what he believed to be unsafe conditions. A Commission administrative law judge (ALJ) held hearings in the case and issued a decision on April 29, 1982. *See Secretary v. Metric Constructors, Inc.,* 4 FMSCRC 791 (1982) (Metric I). The ALJ determined that Metric had discriminated against the Complainants in violation of section 105(c)(1), and awarded Complainants damages against Metric, including back pay with interest, hearing expenses, and a civil penalty. The ALJ, however, denied any back pay to Complainant James W. Parker, and reduced the award to Complainant Joe E. Brown by one week's back pay, on the grounds that each had failed to seek diligently other employment for the periods back pay was denied. Both the Secretary and Metric petitioned the Commission for review of the ALJ's decision, which the Commission granted. On February 29, 1984, the Commission issued a decision affirming the ALJ's decision as to the finding that Metric violated section 105(c)(1), and the partial denial of back pay. *See Secretary v. Metric Constructors Inc.,* 6 FMSHRC 226 (1984) (*Metric II*). The Commission then remanded the case to the ALJ for reconsideration of an issue not relevant to this appeal. On April 24, 1984, the ALJ issued an order in accordance with the Commission's decision as to Metric's liability, the reduction of Brown's back pay, and the denial of Parker's back pay. *Secretary v. Metric Constructors Inc.,* 6 FMSHRC 1050 (1984) (*Metric III*). Because the Commission denied the Secretary's petition for review of this order of the ALJ, the ALJ's order became a final Commission decision 40 days after its issuance. Both the Secretary, as petitioner,

and Metric, as cross-petitioner, appeal to this court from this order of the Commission.

**I. Metric's Violation of Section 105(c)(1).**

Metric does not challenge the Commission's finding that Complainants engaged in a "protected work refusal." Instead, Metric argues that the Commission erred in finding that Metric discharged Complainants in violation of section 105(c)(1) of the Mine Act. Because it offered Complainants the opportunity to do what work was available, that is, the jobs to which they were originally assigned, Metric contends that no discharge in fact occurred. Metric submits that essential to a finding of a discharge is the denial to an employee of an opportunity to do available work. Because the employment here was temporary, no alternative work existed; because Complainants were offered what work was available, Complainants cannot be said to have been discharged. Further, Metric states that because section 105(c)(1) does not obligate the operator to correct any alleged safety problems in work conditions, it satisfied its duty under that section by allowing Complainants to continue their employment, which they refused.

In affirming the ALJ's conclusion that Metric's termination of Complainants violated section 105(c)(1), the Commission determined that substantial evidence supported the ALJ's finding that Metric did not have a reasonable belief that the work conditions were safe when it gave Complainants the option of returning to those conditions or not working at all. The Commission found persuasive Metric's total failure to investigate the safety complaints. As the Commission stated,

> If an operator may take action which adversely affects miners when it does not have a basis for a reasonable belief that the complained-of conditions are

**2.** Section 105(c)(1) of the Mine Act, 30 U.S.C. § 815(c)(1) reads: "No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner ... because such miner ... has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent ... of an alleged danger or safety or health violation in a coal or other mine."

safe, and without addressing the miner's fears, the exercise of the right to register safety complaints and to refuse work will be chilled.

*Metric II*, 6 FMSHRC at 231. Because Metric's belief that the work conditions were safe was unreasonable, and Complainants' belief that the conditions were unsafe was reasonable, the Commission accepted the ALJ's conclusion that the discharge of Complainants was discriminatory and a violation of section 105(c)(1) of the Mine Act.

■ We affirm the Commission's determination that Metric discharged Complainants in violation of section 105(c)(1). The Commission's findings that Complainants held a good faith belief that their work conditions were hazardous, and that they were discharged as a result of engaging in protected activity is supported by substantial evidence.[3] *See* section 106(a)–(b) of the Mine Act, 30 U.S.C. § 816(a)–(b) (on judicial review of a Commission order, the findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record as a whole shall be conclusive). Congress enacted the Mine Act out of concern for the health and safety of miners. *See* 30 U.S.C. § 801; *Sewell Coal Co. v. FMSHRC*, 686 F.2d 1066, 1071 (4th Cir.1982). The anti-discrimination provision, section 105(c)(1), is to be interpreted expansively to effect this concern. *See Donovan ex rel. Anderson v. Stafford Construction Co.*, 732 F.2d 954, 961 (D.C.Cir.1984); *Boich v. FMSHRC*, 704 F.2d 275, 283, *vacated on other grounds*, 719 F.2d 194 (6th Cir.1983). To accept Metric's position that it satisfied its obligation under section 105(c)(1) by offering Complainants the choice of returning to the hazardous conditions or going home would run counter to the strong remedial purpose of the Mine Act. Metric's argument that it had no alternative work available for Complainants is without merit. We agree with the Commission's decision that Metric's conduct constituted a violation of section

105(c)(1). *See Boich*, 704 F.2d at 280, (quoting *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)) (an interpretation of the Mine Act by the Commission that is "reasonably defensible" should be upheld).

## II.  Back Pay Awards

The Secretary contends that the Commission erred in denying James Parker back pay, and in reducing the award to Joe Brown by one week's back pay. The Secretary does not dispute the Commission's finding that Parker wholly failed to seek other employment, and that Brown failed to make a diligent search for other employment for the first week following his discharge by Metric. Rather, the Secretary maintains that the Commission should not have reached the question of Complainant's efforts to seek other work. Metric, the Secretary asserts, could establish an affirmative defense of willful loss of earnings only by showing first that suitable employment was available, and second, that the discharged employees failed to make a diligent effort to obtain such employment. Because Metric failed to show that suitable employment was available to Complainants, the second prong of the affirmative defense, Complainant's job search efforts, should not have been considered. In support of this two-prong formulation of the willful loss of earnings defense, the Secretary cites several cases under Title VII of the Civil Rights Act of 1984.

The Commission rejected the Secretary's presentation of this two-prong approach, holding that Parker's and Brown's failure to seek diligently other employment required adjustments of their back pay awards. In holding that an employee must engage in reasonable exertions to find employment regardless of the availability of work, the Commission noted its practice of turning to the National Labor Relations Act (NLRA) as a model in fashioning back

---

**3.**  Indeed, Metric does not dispute the reasonableness of Complainants' belief that the work conditions were hazardous.

pay awards. *See Secretary ex rel. Dunmire and Estle v. Northern Coal Co.,* 4 FMSHRC 126, 142 (1982) (because remedy provisions of Mine Act are modeled on section 10(c) of the NLRA, it is within the Commission's broad discretion in fashioning remedies to look to precedent under the NLRA). *See also Secretary ex rel. Gooslin v. Kentucky Carbon Corp.,* 4 FMSHRC 1, 2 (1982). The Commission then cited several cases under the NLRA holding that an employer is not required to show that a discriminatee would have found suitable employment had he only made the requisite search. *See, e.g., NLRB v. Madison Courier Inc.,* 472 F.2d 1307, 1317–19 (D.C.Cir. 1972); *Knickerbocker Plastic Co., Inc.,* 132 NLRB 1209, 1219 (1961) ("We do not [believe] that it must appear that [the discriminatee] could have procured [suitable employment] before he can be found to have incurred a willful loss by the failure to apply for it. It is incumbent on a claimant to seek a job for which he has extensive experience"); *American Bottling Co.,* 116 NLRB 1303, 1307 (1956) ("It is our view that a condition precedent to any award of back pay is due diligence on the part of the discharged employee to find other work.... This being so, with such diligence lacking, the circumstance of a scarcity of work and the possibility that none would have been found even with the use diligence is irrelevant").

We affirm the Commission's disposition of the back pay issue. Section 105(c)(2) of the Mine Act, 30 U.S.C. § 815(c)(2) provides that "[t]he Commission shall have authority ... to require a person committing a violation of [§ 105(c)(1)] to take such affirmative action to abate the violation *as the Commission deems appropriate,* including, but not limited to, the rehiring or reinstatement of the miner to his former position with back pay and interest." (Emphasis added). We think the Commission acted within its jurisdiction in following cases under the NLRA; thus, we cannot say that the Commission's denial of Parker's back pay and reduction of Brown's back pay was arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law. *See* 5 U.S.C. § 706 (1982). *See also Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620–21, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966) (Congress has placed "a premium upon agency expertise" in fashioning remedies; reviewing courts should rarely substitute their discretion for that of the agency).

## Conclusion

In sum, we AFFIRM the Commission's order both as to Metric's liability under section 105(c)(1), and the adjustments of Parker's and Brown's back pay awards to reflect willful loss of earnings. The Commission's order is therefore ENFORCED.