**Lorna Sanders TRIPLETT, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS (EDS) and Donald Kremer, jointly and severally, Defendant.**

**File No. G87–340–CA5.**

United States District Court, W.D. Michigan, S.D.

March 30, 1989.

Karen McDonald, Flint, Mich., for plaintiff.

Terrence V. Page, Clark, Hardy, Lewis, Pollard & Page, Birmingham, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents a three-count complaint, asserting claims growing out of plaintiff's discharge from employment with defendant Electronic Data Systems (EDS). Plaintiff alleges in counts I and II that her discharge was the product of racial discrimination. She seeks relief under 42 U.S.C. § 1981, asserting she's been denied equal rights under the law; under Title VII of the Civil Rights Act of 1964, being 42 U.S.C. § 2000 e-2, alleging unlawful discrimi-

nation in employment; and under Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq;* M.S.A. § 3.548(101) *et seq.*, alleging unlawful discrimination in employment. In count III plaintiff asserts a wrongful discharge claim, alleging her discharge constitutes a breach of contract. The Court now addresses (1) plaintiff's motion for reconsideration of the Court's earlier order denying plaintiff's motion for leave to amend the complaint, and (2) defendants' motion for summary judgment as to all claims.

### I

On October 24, 1988, plaintiff moved for leave to amend her complaint so as to add claims under state and federal law asserting she had been discriminated against based on age, and a tort claim seeking damages for negligent infliction of emotional distress. The motion was denied by order dated November 8, 1988. The reason for the denial is threefold.

First, the motion was made after undue delay. After a status conference with counsel on June 14, 1988, the Court issued a scheduling order indicating the pleadings were deemed complete and establishing a discovery and motion filing deadline of October 1, 1988. The Court received no objection to this order and no request to amend the prescribed schedule of events. Yet, plaintiff's motion for leave to amend the complaint was not filed until after the October 1, 1988 deadline and was not argued before the Court until November 1, 1988, the date set for final pretrial and oral arguments on defendants' potentially dispositive motion for summary judgment. Since the evidence which prompted the motion for leave to amend first came to light on July 18, 1988, the delay in filing the motion was deemed unjustified.

Second, the newly discovered evidence which prompted plaintiff's age discrimination claims is insubstantial. This shortcoming is reflected in the allegations of the proposed amended complaint, which are plainly insufficient to state a proper claim. Plaintiff does not allege that her discharge was motivated by age-based discrimination.

Rather, she alleges defendants classified her as ineligible for rehire. Yet, in the absence of an allegation that she has sought and been denied reinstatement, she has failed to set forth a judicially cognizable wrong. Thus, plaintiff's proposed age discrimination claims would be subject to dismissal under Fed.R.Civ.P. 12(b)(6).

Similarly, plaintiff's proposed tort claim, alleging she was subjected to negligently inflicted emotional distress, is patently defective. Michigan tort law recognizes no such claim.

Thus, plaintiff's motion was denied not only because it was filed outside the parameters of the prescribed schedule, but also because amendment of the complaint as proposed would serve no useful purpose. It is well-settled that leave to amend is properly denied where the proposed complaint would not withstand a motion to dismiss. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). Under these circumstances, the Court, in its discretion, determined that justice would not be served by granting leave to amend. In her motion for reconsideration, plaintiff has presented no persuasive reason to conclude otherwise. Thus, the motion must be denied.

## II

Defendants' motion for summary judgment asks the Court to evaluate the factual support for plaintiff's claims. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If defendants carry their burden of showing there is an absence of evidence to support a claim, then plaintiff must demonstrate by affidavits, deposition, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Here, some of the facts are not disputed. Plaintiff Lorna Triplett is a black woman who was employed by defendant Electronic Data Systems ("EDS") until January 8, 1987. She had been employed by General Motors Corporation in a clerical position for approximately 15 years before she was transferred to EDS on January 1, 1985. During her tenure with EDS, plaintiff worked under the supervision of three different persons, Robert Walker, Betty Fowler, and Donald Kremer, in succession. While plaintiff received "satisfactory" performance evaluations from the first two supervisors, her work did not, apparently, please Mr. Kremer, defendant in this matter.

Plaintiff began working directly for defendant Kremer in October, 1986. In December of that year, he gave plaintiff explicit written instructions regarding her job responsibilities and the manner in which he expected them to be discharged. These instructions, which later became known as a "performance improvement plan," also required plaintiff to make a complete record of her time spent on the job. The deficiencies which these instructions were purportedly designed to correct include:

—excessive preoccupation with personal matters during work hours;

—typing errors;

—discourteous telephone etiquette;

—unauthorized opening of confidential mail;

—filing errors; and

—miscellaneous clerical errors reflecting a general lack of attention to detail.

By January 8, 1987, Kremer determined that in spite of the performance improvement plan, plaintiff had not demonstrated

sufficient improvement, and he discharged her.

Plaintiff maintains her discharge was motivated by discriminatory animus, in violation of federal and state laws, and was not supported by "just cause" for discharge, in breach of her employment contract.

## III

Plaintiff's three race discrimination claims, under 42 U.S.C. § 1981, under Title VII of the Civil Rights Act of 1964, and under Michigan's Elliott–Larsen Civil Rights Act, are subject to evaluation under the same substantive standards. *Grubb v. W.A. Foote Memorial Hospital, Inc.*, 741 F.2d 1486, 1493 (6th Cir.1984). These standards have been well-defined in the case law and are applied through a tripartite burden-allocation scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

Thus, in response to defendants' motion for summary judgment, which indicates plaintiff was discharged not as a result of discrimination, but because her work performance was unsatisfactory, plaintiff must come forward with a factual showing sufficient to establish a prima facie case of discrimination. In the context of a discriminatory discharge claim, a prima facie case consists of three basic elements: plaintiff must show (1) that she is a member of a protected class; (2) that she was discharged without valid cause; and (3) that defendant EDS continued to solicit applications for the vacant position. *Shah v. General Electric Co.*, 816 F.2d 264, 268 (6th Cir.1987).

Plaintiff, a black woman, certainly satisfies the first of these elements. As to the second, plaintiff contends there was no valid reason for her discharge and that her work record attests to her work competence. Indeed, plaintiff presents deposition testimony of Robert Walker and performance ratings by Betty Fowler, both former supervisors of plaintiff, indicating her performance was satisfactory in 1985 and 1986. These statements seem to be at variance with Kremer's assessment. They suggest several questions: Did plaintiff's performance deteriorate dramatically during the three months she was supervised by Kremer? Or did Kremer merely hold higher expectations for his subordinates than had plaintiff's former supervisors? If so, were Kremer's expectations legitimate or unreasonably demanding?

Yet, while the Walker and Fowler statements pose critical questions, plaintiff has presented no additional evidence tending to answer them. She has submitted no evidence to support a finding that she actually satisfied Kremer's legitimate expectations and that his unsatisfied expectations were unreasonable. Absent such evidence, plaintiff fails to show she was "qualified" to continue working, fails to raise an inference of discrimination, and thus fails to satisfy the second element of her prima facie case. *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 290–91 (8th Cir.1982).

The third element of the prima facie case also poses a serious challenge to plaintiff's claims. She does not even attempt to show that EDS solicited applications to fill her former position, because, as she correctly argues, the third element of her prima facie case may be satisfied by other evidence which raises an inference of disparate treatment. *Shah, supra,* 816 F.2d at 270; *Beaven v. Commonwealth of Kentucky,*

783 F.2d 672, 676 (6th Cir.1986). This alternative requirement is typically satisfied by evidence that similarly situated nonminority employees with comparable qualifications and comparable work records were not terminated. *Shah,* 816 F.2d at 270–71.

In furtherance of such a showing, plaintiff points to two white female clerical employees in her department at EDS, Dawn Frazier and Sharon Gross. Inasmuch as they, too, performed secretarial duties, they were "similarly situated." Moreover, they, like plaintiff, were both placed on performance improvement plans in the recent past. Yet, while Frazier apparently demonstrated the desired improvement and was retained in employment, Gross did not and was discharged. Since Gross suffered the same fate as plaintiff, Frazier is the only comparable non-minority employee who may contribute to plaintiff's showing that she was, in her discharge, subject to less favorable treatment.[1]

How comparable is Frazier? While she and plaintiff apparently occupied similar positions and were presumptively similarly qualified, plaintiff has made no showing that they had comparable work records. Plaintiff has presented no evidence suggesting that Frazier's performance suffered from deficiencies similar to those identified with respect to her.[2]

Plaintiff attempts to excuse this void in her prima facie case by arguing that evidence of comparable work records is not essential. The argument is simply not in accord with the law. See *Shah, supra,* 816 F.2d at 270–71; *Reynolds v. Humko Products,* 756 F.2d 469, 472 (6th Cir.1985). For

clearly, unless there is evidence that employees of different races were, *under similar circumstances,* treated differently, there is no factual basis to support the desired inference that such disparate treatment was the product of racial discrimination. *Shah,* 816 F.2d at 270. By failing to produce evidence that Frazier had a comparable work record, plaintiff has failed to establish the third element of her prima facie case.

■ The evidence presented thus falls short of the prima facie case threshold in two particulars. Plaintiff has not earned the benefit of a rebuttable presumption that her discharge was motivated by discriminatory animus. Yet, even if she had, the presumption would clearly be found to be rebutted. For defendants have articulated a legitimate nondiscriminatory reason for the discharge: incompetence. This reason is substantiated by the testimony, via affidavit and deposition, of Donald Kremer, Sarah Miller and Betty Fowler, identifying various continual shortcomings in plaintiff's performance. Defendants' burden having thus been met, it is incumbent upon plaintiff to show this reason is pretextual. *Grubb, supra,* 741 F.2d at 1494. She may do this by demonstrating "that a discriminatory motive more likely motivated the employer, or that the reasons given are unworthy of belief." *Irvin v. Airco Carbide,* 837 F.2d 724, 726 (6th Cir.1987). She has demonstrated neither.

Plaintiff has not demonstrated that defendants' reasons are not credible. The deficiencies identified by Kremer are sub-

---

1. Plaintiff maintains Gross is a comparable employee notwithstanding her discharge. This is so, plaintiff contends, because her discharge is not the only adverse disparate treatment of which she complains. She argues she was also subject to disparate treatment in that the performance improvement instructions she was given were qualitatively different from those given to both Frazier and Gross: more demanding and requiring performance of more menial tasks. The Court finds the argument frivolous for three reasons: (1) there is no showing that the performance improvement plans employed were not tailored specifically to correct each employee's particular deficiencies; (2) even if plaintiff's plan were found to be disparately onerous, the hardship caused thereby during the

four weeks it was in effect is not of sufficient magnitude to constitute an actionable injury; and (3) the allegations of the complaint, which define plaintiff's discrimination claims, make no reference to *this* disparate treatment in the work place, but complain exclusively of her discharge.

2. In fact, the only evidence before the Court is to the contrary. The affidavits of Kremer and of his administrative assistant Sarah Miller both indicate that the deficiencies which precipitated Frazier's performance improvement plan were not as serious as plaintiff's and were quickly corrected by Frazier.

stantiated by testimony of Miller and Fowler, two persons of whom plaintiff does not even suspect discrimination. These deficiencies in late 1986 are not effectively refuted by evidence that plaintiff had earlier received satisfactory evaluations. Moreover, plaintiff admits to having made some of the errors identified as deficiencies.

Plaintiff has also failed to make *any* showing of discriminatory motive, the central inquiry of this disparate treatment case. Proof of discriminatory motive is critical, *Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977), and the burden of persuasion remains at all times with plaintiff. *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. When asked in deposition about the basis for her discrimination charge, plaintiff responded in pertinent part:

> He, you know how when you come into a room and you talk to other people, you have conversations, Don Kremer never could, he never could look at me and talk to me, it was always an off glance, a half glance.
>
> . . . .
>
> [H]e would never have any other conversation for me, you know, it was as if I had anything to say to him, he was always very short with me. . . .
>
> . . . .
>
> I believe in my heart that he discriminated against me deliberately. . . .

Plaintiff's observations and opinion are clearly insufficient to demonstrate pretext. They are similar to, but even less substantial than, the facts in *Shah* found insufficient to raise even an inference of discrimination. 816 F.2d at 271. They do no more than cast doubt upon defendants' legitimate reason for discharge, and thus fail to satisfy plaintiff's burden. *Irvin, supra*, 837 F.2d at 726.

While plaintiff may rightly complain that she was treated discourteously by defendant Kremer, no facts have been presented to support a finding that the tension was related to racial differences. The statutes under which plaintiff seeks redress for race discrimination are designed for that limited purpose; they do not provide a shield against all harsh treatment in the work place. *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986).

Accordingly, the Court finds plaintiff has both failed to present a prima facie case of race discrimination and failed to rebut defendants' legitimate nondiscriminatory reason for her discharge. It follows that the race discrimination claims embodied in counts I and II of the complaint are subject to summary dismissal under Fed.R.Civ.P. 56(c). See *Shah*, 816 F.2d at 271.

### IV

In count III, plaintiff alleges her discharge was in breach of a contractual promise not to discharge her except for "just cause." Plaintiff admits this promise was not made to her expressly by defendants, orally or in writing. She contends such promise arise by implication from certain EDS company policies which created a "legitimate expectation" that she would not be discharged except for just cause.

Michigan law, applicable in this diversity action, does recognize such a cause of action. *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980).

*Toussaint* makes employment contracts which provide that an employee will not be dismissed except for cause enforceable in the same manner as other contracts. It did not recognize employment as a fundamental right or create a new "special" right. The only right held in *Toussaint* to be enforceable was the right that arose out of the promise not to terminate except for cause.

Employers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason. The obligation which gave rise to this action is based on the agreement of the parties; it is not an obligation imposed on the employer by law. This is an action for breach of contract and not a tort action.

*Valentine v. General American Credit, Inc.,* 420 Mich. 256, 258–59, 362 N.W.2d 628 (1984) (footnotes omitted). Thus, Michigan law continues to recognize the general rule that employment for an indefinite term is terminable at will; that is, terminable by either party at any time for any or no reason. *Suchodolskli v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 694–95, 316 N.W.2d 710 (1982). This rule may be altered by agreement of the parties. In the absence of an *express* agreement, the *Toussaint* court noted, the enforceability of an *implied* promise is dependent upon the *legitimacy* of the employee's expectations as they arise from the employer's policy statements. 408 Mich. at 598, 292 N.W.2d 880; *Dzierwa v. Michigan Oil Co.,* 152 Mich.App. 281, 285, 393 N.W.2d 610 (1986). "A mere subjective expectancy of continued employment on the part of an employee will not justify an expectation of termination for just cause only." *Id. Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 478, 308 N.W.2d 459 (1981), *leave denied,* 414 Mich. 870 (1982).

■ Thus, the question presented is whether the policy statements relied on by plaintiff can have given rise to legitimate expectations that she would not be discharged except for just cause. The first source of such statements is an employee handbook entitled, "EDS: You, Your Family and Your Company." Plaintiff does not point to any provision in the handbook which assures that discharge will be for just cause only. In fact, the provisions relied on have nothing to do with termination. Rather, plaintiff relies on assurances that good performance will be rewarded by increased earnings and advancement. These assurances are said to negatively imply that only poor performance will lead to discharge.

Plaintiff's argument is not logical and not persuasive. An assurance that good performance will be rewarded simply does not compel the conclusion that mediocre performance will suffice to maintain the status quo and only poor performance will result in discipline. As noted in *Dzierwa, supra,* 152 Mich.App. at 285–86, 393 N.W.2d 610, representations regarding potential future benefits and promotions are not related to termination policy. See also *Kay v. United Technologies Corp.,* 757 F.2d 100 (6th Cir.1985); and *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933, 936 n. 6 (E.D.Mich.1987). Plaintiff's contrary expectation is not reasonable, is merely subjective, and is insufficient to support the finding of a contractual obligation. Contractual obligations are founded upon agreement of the parties, *Valentine, supra,* not upon uncompelled negative implications.

■ Plaintiff also relies on a manager's guide entitled, "EDS: Managing People." It is clear, however, that this guide was never intended or understood to be part of the employment contract. The guide itself expressly provides it is "intended for use by EDS managers only." Plaintiff admits she is aware of the guide solely because she was charged, as part of her clerical duties, with responsibility for distributing it to management personnel. It is apparent the manager's guide was not distributed to employees with the intent of eliciting enhanced performance. In fact, by expressly providing in the guide that "it should not be made available to non-management personnel," EDS obviously attempted to avoid the "situation instinct with an obligation," recognized in *Toussaint* as the basis for the implied duty not to discharge except for cause. 408 Mich. at 613, 292 N.W.2d 880.

Further, the guide provides:

This manager's guide serves as a reference for managing the people resource of EDS. The philosophies and suggestions included are not intended to dictate rigid conformity to established policies and procedures, but rather offer ideas to help managers deal with the challenge of developing people to their full potential.

Thus, even though the guide "suggests" managers should terminate employees only for cause, it does not purport to establish policy. And since the guide was never held out to plaintiff as representing the terms of her employment and cannot reasonable be understood as such, her asserted con-

trary expectation is not legitimate. See *Dell v. Montgomery Ward and Co., Inc.*, 811 F.2d 970, 972–73 (6th Cir.1987). Authority relied on by plaintiff, *Wiskotoni v. Michigan National Bank*, 716 F.2d 378 (6th Cir.1983); *Ross v. State Farm Ins. Co.*, 676 F.Supp. 781 (E.D.Mich.1987); and *Renny v. Port Huron Hospital*, 427 Mich. 415, 398 N.W.2d 327 (1986), is distinguishable in that each decision rests upon employee expectations arising from policies enumerated in an *employee handbook issued to the employee.*

This case arguably poses a close question inasmuch as EDS nowhere expressly provided that plaintiff's employment was "at-will." *Cf. Dell, supra; Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986). Yet, the general rule remains that, absent a contrary agreement, an employment relationship of indefinite duration is terminable at will. Here, the rule abides because the "policy statements" relied on are plainly insufficient to justify a legitimate expectation to the contrary.

■ Finally, plaintiff contends a "just cause" contract arose from an oral representation made by defendant Kremer in December, 1986. It appears that when plaintiff was given the performance improvement instructions, Kremer told her that unless she complied she would be terminated. This is not the same, of course, as a representation that she would not be discharged unless she failed to improve. However, it is a statement made directly to plaintiff with the intent of eliciting improved performance. It may be sufficient to create a genuine issue as to the legitimacy of plaintiff's expectation that, if she improved, she would not be discharged.

The fatal flaw in this theory is the absence of any evidence suggesting that plaintiff's performance did improve. For if Kremer's representation is deemed to create a binding agreement, the conditions thereof are similarly binding. "[W]hen an employer enters into a contract with an employee which requires cause to discharge, the employer must be permitted to establish its own standards for job performance and to dismiss employees for no-

nadherence to those standards." *Ritchie v. Michigan Consolidated Gas Co.*, 163 Mich. App. 358, 369, 413 N.W.2d 796 (1987). See also *Toussaint*, 408 Mich. at 623–24, 292 N.W.2d 880.

Kremer's "promise not to discharge" was expressly conditioned upon compliance with the explicit requirements of the performance improvement plan. The affidavit statements of Kremer and Miller indicate plaintiff did not fulfill the requirements of the performance improvement plan and that her performance continued to suffer from the same deficiencies which the plan was designed to correct. These statements remain uncontroverted. Plaintiff's only defense is the argument that she believed she would be given a longer period of time to demonstrate improvement. She cites (1) a statement made by Kremer that plaintiff would be given until early to mid January, 1987; and (2) a statement made by Miller to the effect that plaintiff was told in early December, 1986, that she would be given four to six weeks. Yet, her discharge in January 8, 1987 was within the time parameters established by both statements. Even according to the statements relied on by plaintiff, her discharge was not premature. After having apparently shown no improvement, plaintiff was not justified in expecting that she would be given the benefit of the extended improvement period.

The Court concludes, therefore, that even if there is a genuine issue as to whether Kremer's representation gave rise to a "just cause" requirement, the issue is rendered immaterial by virtue of the undisputed fact that plaintiff was discharged for "cause," as defined in the performance improvement plan. See *Celotex, supra*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Her discharge was not, as a matter of law, in breach of Kremer's oral promise. There being no genuine issue as to material fact, plaintiff's wrongful discharge claim is subject to summary judgment under Fed.R. Civ.P. 56(c).

V

In conclusion, the Court has determined that neither plaintiff's race discrimination

claims nor the wrongful discharge claim has sufficient factual support to survive defendants' motion for summary judgment. The motion must be granted; plaintiff's complaint must be dismissed in its entirety. Further, for the reasons stated, plaintiff's motion for reconsideration of the Court's order denying her leave to amend the complaint must be denied. An order consistent with this Opinion shall issue forthwith.