**Donald F. ROSINSKI, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, a Texas corporation, Defendant.**

**No. 89–CV–73512–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 13, 1990.

---

## MEMORANDUM OPINION
## AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Plaintiff has responded and the motion is now ripe for review.

### FACTS

Plaintiff brought this suit as a result of his termination from employment with the defendant, Electronic Data Systems Corporation (hereafter, EDS). Plaintiff was terminated by EDS on December 18, 1986. Plaintiff began his employment relationship with EDS after General Motors acquired EDS as an independent subsidiary in 1984. Plaintiff had been employed with GM since 1962. On June 1, 1985, plaintiff voluntarily transitioned from GM to EDS. Plaintiff was recruited to EDS by George Simenton, plaintiff's former supervisor at

GM. Simenton had also transferred to EDS.

Plaintiff began working as an engineering consultant for EDS's "GM Coordination Group." As a result, plaintiff served as a liaison between GM and EDS. Plaintiff worked in this capacity from June 1, 1985 to February 28, 1986. However, EDS phased out its GM Coordination Group in December of 1985. Plaintiff began searching for new employment with EDS and with GM. In March of 1986, plaintiff began work as an account manager within EDS's Buick–Oldsmobile–Cadillac Headquarters Group. This job involved new responsibilities for the plaintiff, consisting of the management of the financial aspects of the business. Plaintiff's previous experience had been technical, but plaintiff wanted to begin working in the business portion of EDS.

Defendant asserts that plaintiff was not satisfactorily fulfilling his duties as an account manager. These duties included new responsibilities to manage the financial aspects of the business and insure that his account was profitable. Plaintiff's immediate supervisor, Robert Fotsch, informed plaintiff of his deficiencies, including deficiencies with respect to the profit and loss statements for his account. (Deposition of Fotsch, pp. 38–39).

On November 20, 1986, plaintiff received a marginal performance rating on his annual appraisal after his earlier alleged deficiencies continued. On November 26, 1986, plaintiff was given a performance improvement plan. The performance plan required plaintiff to complete certain tasks and show improvement in his responsibilities. (Exhibit C attached to Defendant's Motion for Summary Judgment). This plan was prepared by Robert Fotsch and Howard Andrews. According to defendant, plaintiff failed to satisfactorily perform the requirements of his improvement plan and his employment was, therefore, terminated on December 18, 1986.

This suit was brought on May 19, 1989. Plaintiff's complaint alleges a breach of contract as a result of his alleged termination without just cause. Plaintiff's complaint also alleges misrepresentation by EDS.

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their

burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

In this instance, plaintiff has asserted that he was employed by EDS under a just-cause contract. As a result, plaintiff contends that he could not be terminated by EDS without just cause.

## OPINION

■ Under Michigan law, employment is presumed to be at will, and therefore, termination is possible with or without cause. However, this presumption can be destroyed where the employer's statements and/or policies create an expectation in the employee's mind that he will be discharged only for just cause. Under this theory of implied contract, the employer may be obligated to fulfil those expectations. *Toussaint v. Blue Cross–Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980). In the absence of an express agreement, the enforceability of an implied promise is dependent on the legitimacy of the employee's expectation in light of the employer's statements and policies. *Toussaint,* 408 Mich. at 598, 292 N.W.2d 880. Subjective expectancy of continued employment does not justify a belief that termination can only be for just cause. *Schwartz v. Michigan Sugar Company,* 106 Mich.App. 471, 478, 308 N.W.2d 459 (1981); *Taylor v. General Motors Corp.,* 826 F.2d 452 (6th Cir. 1987).

Plaintiff has alleged numerous written and oral representations by defendant in order to establish his claim of implied contract of continuing employment with discharge only for cause. The main issue before this Court is whether defendant's policies and/or statements could have led plaintiff to legitimately expect that he would not be discharged except for just cause.

This Court is not persuaded by plaintiff's argument. For the reasons that follow, this Court finds that plaintiff's employment was at will and no objective evidence exists to legitimize plaintiff's expectation of employment with discharge for just cause only.

■ According to plaintiff, EDS made sure applicants wanted a long-term commitment. EDS also stated that it treated employees with dignity and respect and provided employees with everything a union provides, including yearly pay increases. This Court agrees with defendant's argument, however, that these are nothing more than general statements pertaining to the possible benefits and rewards of employment with EDS. This Court finds that these types of statements relate to advancement and opportunity within the company and are merely "welcome aboard" language designed to show the benefits of the proposed employment relationship. In *Schwartz v. Michigan Sugar Company,* 106 Mich.App. 471, 308 N.W.2d 459 (1981), the Michigan Court of Appeals ruled that representations regarding the organization, its close-knit structure, low turnover, salaries and other benefits, were not sufficient to give rise to a just-cause contract. The case law with respect to these types of statements is clear. Statements made by an employer with respect to its organization, the possibility for advancement and employee benefits or salaries are not promises or statements about the employer's termination policy, but rather, indicative of what the employee can expect through continued employment. *Dzierwa v. Michigan Oil Company,* 152 Mich.App. 281, 286, 393 N.W.2d 610 (1986).

■ The fact that plaintiff, as well as other transferees from GM to EDS did not sign an at-will contract is irrelevant. As defendant has correctly pointed out, employment is presumed terminable at will in Michigan. Accordingly, the absence of a written at-will employment agreement is not sufficient to legitimize a belief that termination can only be for just cause.

■ Moreover, plaintiff was put on notice of his at-will status with EDS by virtue of plaintiff's participation in the EDS stock incentive plan. A portion of the incentive for plaintiff's transition to EDS was a special stock incentive plan offered to former GM employees moving to EDS. Upon acceptance of this plan, plaintiff was required to sign a restricted stock agreement. Apparently plaintiff received, as an appendix to the restricted stock agreement, a prospectus regarding the stock incentive plan. A portion of this prospectus stated as follows:

No affect on employment. Nothing herein contained, including the sale or award of any shares and the grant of any rights or options, shall affect the rights of the company to terminate any participant's employment at any time, for any reason.

(Defendant's Motion for Summary Judgment, pg. 8, and Exhibit F). According to plaintiff, the language "at any time, for any reason" implies the employer must have a valid reason for the termination. This Court disagrees. This language obviously indicates that employment is at will. The language with respect to termination at any time, for any reason indicates the employer need not have just cause to terminate an employee.

■ A significant portion of those policies and/or statements relied upon by plaintiff to show the existence of an implied just-cause contract were obtained from EDS publications. Defendant asserts that statements and policies set forth in EDS publications such as "Managing People," "Leading People" and "Quest" are insufficient to create an implied just-cause contract. Defendant claims these publications are merely guides created for the benefit of management personnel. These publications are not employee manuals, nor are they distributed to employees. Instead, defendant claims such manuals contain guidelines to assist managers with developing the full potential of their employees. As a result, defendant claims these management manuals are insufficient to legitimize an expectation of an implied just-cause contract. *Triplett v. Electronics Data Systems Corp.*, 710 F.Supp. 667 (W.D.Mich.1989) *affirmed* 900 F.2d 260 (6th Cir.1990). In *Triplett*, an employee claimed that a just-cause contract existed. The plaintiff in that case relied on the EDS Employee Handbook entitled, "You, Your Family and Your Company" and the Manager's Guide entitled, "Managing People." In rejecting the plaintiff's assertion of the existence of a just-cause contract, the Court stated:

Plaintiff also relies on a Manager's Guide entitled "EDS: Managing People." It is clear, however, that this guide was never intended or understood to be part of the employment contract. The guide itself expressly provides it is "intended for use by EDS managers only." ... It is apparent the Manager's Guide was not distributed to employees with the intent of eliciting enhanced performance. In fact, by expressly providing in the guide that "it should not be made available to non-management personnel," EDS obviously attempted to avoid the "situation instinct with an obligation," recognized in *Toussaint* as the basis for an implied duty not to discharge except for cause.

*Triplett*, 710 F.Supp. at 673.

Plaintiff has attempted to distinguish the facts of this case with those of *Triplett*. The plaintiff in the *Triplett* case was a non-management employee, unlike Mr. Rosinski, who was in a management position with EDS. Furthermore, Rosinski claims he was expressly instructed to follow the guidelines set forth in "Managing People." In addition, plaintiff claims he was told by several different people that EDS attempted to follow the policies defined in those manuals.

In *Gozdor v. Electronic Data Systems Corp.*, No. 88–4695, 1989 WL 222981 (E.D.Mich.1989), the plaintiff was also an EDS supervisor after having worked for 22 years at GM. Plaintiff then transitioned to EDS. Plaintiff Gozdor relied on the EDS Manual "Managing People," in an attempt to establish an implied just-cause contract. This Court granted summary judgment, holding that:

The Court finds the reasoning of *Triplett v. EDS* persuasive.... Gozdor was the supervisor of 8 other employees. He presumably became aware of the guide in his capacity as a supervisor, not as an employee of EDS. In any event, even if Gozdor did rely on the booklet as creating a just-cause contract, the court finds that this reliance is not legitimate given the advisory, rather than mandatory character of the language therein.

*Id.* at pg. 10. (Also see Defendant's Motion for Summary Judgment, Exhibit N).

This Court finds that the EDS management manuals are advisory in nature. The management manuals do not limit or specifically state certain conditions under which EDS employees may be terminated. Accordingly, these management manuals do not create a just-cause contract. As the *Triplett* court stated ... even though the guide "suggests" managers should terminate employees only for a cause, it does not purport to establish policy. *Triplett*, 710 F.Supp. at 673.

The *Triplett* court's conclusion is further supported by plaintiff's own deposition testimony. In his deposition, plaintiff was questioned with respect to certain notes he had taken during management instruction sessions. Specifically, plaintiff was questioned as to his recollection of what an instructor had said about improvement plans. Plaintiff was asked if he could recall what the instructor had said about the improvement plans.

Q. Do you recall what the instructor had to say about that?

A. This was just a statement. I don't recall how much we discussed this.

Q. Do you think maybe it was a suggestion how you should put it to the employee as to whether he can live with the performance improvement plan?

A. I wouldn't have done it that way.

Q. Were you told that you had to do it that way or was that just one of many guidelines of different ways you could do it?

A. Managers have total prerogative on how they do things. In certain circumstances some managers might do this, but I wouldn't. Improvement plan, to me, is not an improvement plan. We both have to agree to it.

Q. So, you would—you said do it that way?

A. I wouldn't.

(Plaintiff's Deposition, pp. 63–64).

Accordingly, this Court finds that statements and policies found in EDS's management manuals are not sufficient to legitimize an expectation of an implied just-cause contract.

In similar fashion, assurances made in EDS's Employee Manual entitled, "You, Your Family and Your Company," also fail to create a contract for just-cause employment. In *Triplett*, the court ruled:

... Plaintiff does not point to any provision in the handbook (You, Your Family and Your Company) which assures that discharge will be for just cause only. In fact, the provisions relied on have nothing to do with termination. Rather, plaintiff relies on assurances that good performance will be rewarded with increased earning and advancement. These assurances are said to negatively imply that only poor performance will lead to discharge.

Plaintiff's argument is not logical and not persuasive. An assurance that good performance will be rewarded simply does not compel the conclusion that mediocre performance will suffice to maintain the status quo and only poor performance will result in discipline ... Plaintiff's contrary expectation is not reasonable, is merely subjective and is insufficient to support the finding of a contractual obligation. (Citations omitted).

*Triplett*, 710 F.Supp. at 673.

Plaintiff claims he was recruited to EDS by George Simenton. According to plaintiff, Simenton made oral representations regarding the fact that EDS does not anticipate any lay-offs, is in a growth mode and uses a six-step method as a tool to assist employees in clarifying problem areas. Simenton also informed plaintiff that he would not have any problems at EDS. Since job security was an important aspect

of plaintiff's decision to join EDS, plaintiff claims that these verbal assurances were made to show that EDS had a progressive disciplinary procedure entitled, "The Six-Step Method." This six-step method provided for early recognition of problems, early notification, observation and documentation, verbal warning, improvement plans and, finally, improvement or termination of employment. Based on these oral assurances, plaintiff claims he transitioned to EDS with the expectation that he could only be terminated for just cause.

Many of the verbal assurances given to plaintiff by Mr. Simenton consisted of statements with respect to policies and procedures taken directly from the previously mentioned EDS Management Manuals. As indicated, reliance on those manuals is not sufficient to legitimize an expectation of a just-cause employment contract. Assurances that good performance will be rewarded, does not mean mediocre performance will be sufficient. Nor do such assurances create a reasonable expectation of dismissal for cause only. *Triplett*, 710 F.Supp. at 673.

Moreover, it appears from the evidence in the record that despite these numerous alleged oral assurances, plaintiff was still skeptical of the job security at EDS. In his deposition, plaintiff admitted that he still was not certain about the job security at EDS after speaking with Mr. Simenton and other EDS employees.

Q. Was there anything else George Simenton told you with respect to job security, that would be something other than—I believe you said he addressed the subject of layoffs and mechanisms that were in place?

A. Even though he gave me assurance that I had nothing to worry about with EDS, I told him I was—it was still a concern of mine because of the other discussions I had with EDS employees and spouses of EDS employees that worked for General Motors.

Q. So, you were still concerned despite Simenton's assurance?

A. That's right.

Q. That's because you heard rumors of things that might be happening at EDS from other people?

A. Yes.

Q. You took the position anyway, though, didn't you?

A. Eventually I did take the position. (Plaintiff's Deposition, pp. 147–148).

This Court finds that to the extent EDS's hiring manager George Simenton made assurances to plaintiff, such assurances could not have caused plaintiff to reasonably and legitimately expect that his employment was subject to discharge for just cause only.

In Count II of his complaint, plaintiff contends that the same representations which formed the basis of his implied employment contract also form a claim for fraudulent misrepresentation. Defendant claims that a tort action arising out of a breach of contract is insufficient to state an independent cause of action. *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895 (1956). This Court agrees. Any duty imposed upon defendant as a result of the alleged statements and policies can only create a claim for breach of contract. Any alleged duty on EDS was only contractual and not a duty imposed by law. In any event, this Court need not address plaintiff's misrepresentation claim because the alleged statements and policies of the defendant failed to create any contractual duty on behalf of EDS to terminate plaintiff for just cause only.

### CONCLUSION
Based upon the foregoing, this Court finds that no genuine issues of material fact exist. Therefore, defendant is entitled to a judgment as a matter of law. Accordingly, this Court hereby GRANTS defendant's motion for summary judgment. Plaintiff's claim is DISMISSED.

IT IS SO ORDERED.