**James PACHLA, Plaintiff–Appellant,**

v.

**SAUNDERS SYSTEM, INC., Defendant–Appellee.**

No. 89–1651.

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 7, 1989.

Decided March 28, 1990.

Christopher E. Mengel, Detroit, Mich., for plaintiff-appellant.

Timothy W. Hefferon, Hill, Lewis, Adams, Goodrich & Tait, Birmingham, Mich., for defendant-appellee.

Before JONES and MILBURN, Circuit Judges, and RUBIN, Chief District Judge.*

MILBURN, Circuit Judge.

Plaintiff-appellant James Pachla appeals the district court's award of summary judgment for defendant-appellee Saunders System, Inc., in this *Toussaint* wrongful discharge diversity action. For the reasons that follow, we affirm in part and reverse in part.

## I.

## A.

Saunders is a national transportation company engaged in the truck rental and leasing business. Pachla began his employment with Saunders in November 1977 as a service manager at Saunders' facility in Cincinnati, Ohio. Pachla's duties as service manager included scheduling preventive maintenance for the vehicle fleets, purchasing materials, supervising employees, controlling inventory, and other general office management. Pachla worked in Cincinnati for approximately eleven months before accepting a transfer to the position of service manager at Saunders' facility in Taylor, Michigan. In July 1980, Pachla was promoted to district service manager, a position in which he was responsible for three of Saunders' facilities and had four salaried supervisors reporting to him. Pachla's promotion resulted from a corporate reorganization which involved the consolidation of branches into larger districts.

In October 1982, Saunders again reorganized, with districts being consolidated into larger regions, and Pachla was promoted to regional operations manager for the Michigan region. In October 1984, Saunders restructured its organization by consolidating seventeen regional offices into eleven area offices. As part of this reorganization, the Michigan region, managed by Pachla, was consolidated with the Wisconsin region, managed by John Simmons.

In late October 1984, Pachla was informed that John Simmons would be the operations manager for the newly combined Michigan–Wisconsin area. Pachla testified in his deposition that Don Schwanke, Saunders' Vice–President in charge of operations, informed Pachla that he was being laid off because Simmons had more seniority and had exercised his option to bump Pachla. Pachla was the only regional operations manager laid off as a result of Saunders' reorganization in October 1984, and although among the other regional managers two had less seniority than Pachla, he was not given the opportunity to bump them. Approximately two weeks after his layoff, Pachla learned that Simmons had been fired by Saunders due to a conflict of interests, and that a lower-level manager who had worked for Saunders less than one year had been promoted and transferred to replace Simmons.

## B.

Pachla filed the present action on August 14, 1985, in the Wayne County Circuit Court, and the action was removed to the federal district court on the basis of diversity of citizenship. Pachla's three-count complaint alleged breach of employment contract, negligent performance of contractual duties, and breach of implied covenant of good faith and fair dealing. On October 31, 1986, Saunders filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the court took the motion under advisement pending our en banc decision in *Boynton v. TRW, Inc.*, 858 F.2d 1178 (6th Cir.1988).

Pachla responded to the motion for summary judgment by filing a brief with supporting exhibits and his affidavit. Pachla also withdrew counts II and III of his complaint, leaving only the claim for breach of employment contract. Pachla's breach of employment contract claim involves what is best described as "substantive" and "procedural" issues. The substantive issue is whether Pachla was discharged for just

---

* Honorable Carl B. Rubin, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

cause. The procedural issue is whether Pachla was discharged in compliance with layoff procedures established by Saunders.

On May 5, 1989, the district court issued a Memorandum Opinion and Order granting Saunders' motion for summary judgment and dismissing Pachla's complaint. The district court held that our decision in *Boynton* rendered Pachla's "employment contract unenforceable in situations of economically mandated reductions in work force." The district court held "that, as a matter of law, Plaintiff's discharge for economic reasons, as determined by the discretion of Defendant's management, constitutes termination for sufficient cause to overcome a breach of employment contract claim." Noting evidence that Saunders was incurring economic and financial difficulties, the district court concluded that Pachla "failed to make a showing sufficient to establish that [Saunders] was acting in any manner other than a good faith attempt to reorganize based upon economic necessity and circumstance."

The district court also rejected Pachla's procedural challenge to his discharge, holding that the layoff procedures set forth in the personnel manual did not apply to Pachla because he was an exempt-salaried employee. Moreover, the court held that even if Pachla was covered by the layoff provision, the manual did not address layoffs stemming from a corporate reorganization based upon economic necessity. This timely appeal followed. The principal issue on appeal is whether the district court erred by granting summary judgment for Saunders.

## II.

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). We must view all facts and infer-

ences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, in responding to a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

The present action is governed by the Michigan Supreme Court's ruling in *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), and its progeny. In *Toussaint*, the court held that "an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." *Id.* at 610, 292 N.W.2d at 890. The court also held that where a personnel manual "established contractual rights in [plaintiff] to be disciplined and discharged only in accordance with the procedures ... set forth," a jury question is presented as to whether plaintiff was discharged in compliance with the procedures. *Id.* at 619, 292 N.W.2d at 895. For purposes of this appeal, Saunders concedes that Pachla had a *Toussaint* just cause employment con-

tract.[1]

### A.

The district court granted summary judgment on the substantive issue in this case on the basis of our decision in *Boynton v. TRW, Inc.*, 858 F.2d 1178 (6th Cir. 1988) (en banc), and the cases discussed therein. Pachla contends that *Boynton* is distinguishable because in that case plaintiff conceded that his layoff was due to adverse economic circumstances, and Pachla has made no such concession in this case. Rather, Pachla argues that Saunders used the economic necessity defense as a pretext to discharge him without cause. Thus, there is a dispute as to the true reason for Pachla's discharge.

In *Toussaint*, the court held:

Where the employer alleges that the employee was discharged for one reason—excessive tardiness—and the employee presents evidence that he was really discharged for another reason—because he was making too much money in commissions—the question also is one of fact for the jury. The jury is always permitted to determine the employer's true reason for discharging the employee.

*Toussaint*, 408 Mich. at 622, 292 N.W.2d at 896. Ordinarily, a jury question is presented when there is a dispute as to the "true reason" for discharging an employee. However, to reach the jury, *Toussaint* requires the employee to present *"evidence that he was really discharged for another reason." Id.* (emphasis added). With a motion for summary judgment, the defendant-employer tests whether the employee has presented sufficient evidence to raise a question for the jury.

Pachla principally relies upon *Ewers v. Stroh Brewery Co.*, 178 Mich.App. 371, 443 N.W.2d 504 (1989), in which the court held that "a jury should be permitted to determine whether 'economic necessity' was de-

fendant's true reason for discharging plaintiff." *Id.*, 443 N.W.2d at 507. Pachla argues that the decision in *Ewers* precludes granting summary judgment for Saunders because "the 'question of just cause' is one of fact for the jury." *Id.*

The holding in *Ewers* does not preclude granting summary judgment where there is no genuine issue of material fact. In *Ewers*, the court held that a jury question on the issue of just cause is created where "the employee presents *evidence* that the economic necessity was pretextual and that he was discharged for another reason." *Id.* (emphasis added). The court concluded "there was substantial evidence produced by plaintiff to rebut defendant's economic necessity defense sufficient to create a jury question on the legitimacy of the defense." *Id.* Thus, the inquiry remains whether Pachla presented sufficient evidence to create a jury question on the legitimacy of Saunders' economic necessity defense.

Saunders' motion for summary judgment was not accompanied by supporting affidavits. However, "a motion for summary judgment may be made pursuant to Rule 56 with or without supporting affidavits.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.*, 477 U.S. at 322, 106 S.Ct. at 2552.

In the present case, answers to interrogatories and depositions on file show that Pachla's layoff was incident to a nationwide reorganization by Saunders. In response to one of Pachla's interrogatories, Saunders explained that "Pachla was placed on permanent layoff after the company decided to condense its regional offices into a smaller number of area offices, thereby reducing the number of regional

---

1. Pachla testified in his deposition that at his initial interview with Bill Armistead, Vice–President and Regional Manager for Saunders' Great Lakes Region, he was told that he would have a job with the company until his work was unsat-

isfactory. Pachla also testified that when he was offered the position in Cincinnati, he was told that as long as he was performing up to expectations there would be no termination except for a just cause.

operations managers the company needed." Defendant's Response To Plaintiff's First Set Of Interrogatories at 14. In fact, Saunders underwent three reorganizations during Pachla's tenure of employment.

Gordon Shelfer, Jr., President and Chief Executive Officer of Saunders, testified in his deposition that

each of these layoffs that we've gone through were designed to address the company's performance in terms of return on the investment that was there. The company was not performing and we kept trying to get it to a point where it could. We took out overhead; we tried to align the organization....

Deposition of A. Gordon Shelfer, Jr. at 10–11. Thomas Dunn, Vice–President of Personnel at Saunders, testified in his deposition that Saunders was experiencing some economic difficulties and decided to consolidate its regions, and this included combining the Michigan Region with the Wisconsin Region and naming John Simmons as manager of the newly combined area. Deposition of Thomas Dunn at 8–9.

Pachla's evidence in response to the motion for summary judgment consisted of his affidavit, Saunders' responses to interrogatories, certain employment-related records and memoranda, and Saunders' personnel manual. Pachla's evidence showed that he was the only regional operations manager laid off during the 1984 reorganization, and that two regional operations managers with less seniority were retained. Pachla's evidence also showed that his successor, John Simmons, was terminated approximately two weeks after Pachla was laid off, and that Simmons was replaced by a manager with less seniority than Pachla. Pachla testified in his deposition that when he asked Gordon Shelfer, Jr., Saunders' Vice–President in charge of human resources at that time, why he was not rehired to replace Simmons, Shelfer told Pachla that there was a problem with Pachla not "being a team player." Pachla also stated in his affidavit that "during the time he served as the Michigan Regional Operational Manager, his region generally met all financial expectations and operated on a

profitable basis irrespective of what the national profit situation may have been." Pachla contends that this evidence is sufficient to create a jury question as to the true reason for his discharge.

■ Under *Ewers*, the burden is upon Pachla to show "that a genuine issue of disputed fact exists concerning the legitimacy of the economic necessity reduction in force defense presented." *Ewers*, 178 Mich.App. at 378, 443 N.W.2d at 507. Unlike the plaintiff in *Ewers*, Pachla has not presented substantial evidence "to rebut [Saunders'] economic necessity defense sufficient to create a jury question on the legitimacy of the defense." *Id.* In *Ewers*, the plaintiff presented deposition and documentary evidence, including defendant's Form 10–K annual report filed with the Securities and Exchange Commission, which showed "that defendant was experiencing substantial economic growth and operating at a substantial profit before and after his discharge." *Id.* at 375, 443 N.W.2d at 506. However, Pachla has presented no evidence suggesting that the reorganization and elimination of his job was not economically motivated. Because Pachla has failed to rebut Saunders' economic necessity defense, there is no genuine issue of material fact concerning the legitimacy of the defense, and summary judgment was properly granted on this issue.

### B.

■ Despite the adverse disposition of Pachla's substantive challenge to his discharge, he is not precluded from challenging the procedure followed by Saunders in discharging him. *See Boynton*, 858 F.2d at 1184. "The question whether termination was in breach of contract, *i.e.,* whether plaintiff was discharged for cause and *in compliance with applicable procedures,* is also for the jury as long as there is a genuine factual dispute." *Struble v. Lacks Indus., Inc.,* 157 Mich.App. 169, 175, 403 N.W.2d 71, 74 (1986) (per curiam) (emphasis added). Pachla contends that Saunders violated the policies and procedures set forth in its personnel manual regarding

laying off employees. The district court rejected Pachla's assertion that Saunders breached its layoff policy, holding that the layoff procedures in the personnel manual did not apply to Pachla because he was an exempt-salaried employee. Moreover, the district court held that the manual did not address layoffs stemming from a corporate reorganization based upon economic necessity.

Pachla argues that "Saunders had a policy that if performance was equal, the person with the longest term of service would be retained and the person with the lesser seniority would be laid off." Appellant's Brief at 19. Pachla argues that his job performance was impeccable, and Saunders concedes that Pachla performed his employment duties satisfactorily. Thus, Pachla argues that Saunders violated its seniority-based layoff policy by laying him off while retaining two operations managers with less seniority.

Saunders' personnel manual provides for a seniority-based layoff procedure for non-exempt (clerical) and hourly employees. Pachla contends that regardless of the written personnel manual, Saunders employed the same seniority-based standards in laying off both exempt and nonexempt employees. Pachla argues that the written personnel manual is contradicted by Saunders' actual enforcement of the layoff policy and by Pachla's understanding of that policy based on oral statements made to him. To support his position, Pachla notes that Thomas Dunn, Saunders' Vice-President of Personnel, testified in his deposition that all other things being equal, seniority was a factor used to determine who would be laid off.

The personnel manual clearly provides that the seniority-based layoff procedure applies only to nonexempt and hourly employees. Thus, the personnel manual provided Pachla, an exempt-salaried employee, no reasonable expectation that he would be laid off on the basis of seniority. Pachla has shown only a subjective understanding that layoffs were based on seniority and "a mere subjective expectancy on the part of an employee ... [does] not create a legit-imate [*Toussaint*] claim." *Boynton*, 858 F.2d at 1185 (quoting *Schwartz v. Michigan Sugar Company*, 106 Mich.App. 471, 478, 308 N.W.2d 459, 462 (1981), *appeal denied*, 414 Mich. 870 (1982)).

■ Thomas Dunn's testimony established only that seniority was one factor in Saunders' layoff procedure. Indeed, Pachla concedes that seniority was the basis for layoffs at Saunders only "if performance was equal." Appellant's Brief at 19. Because Pachla has failed to show that Saunders had a layoff policy based solely on seniority, he cannot argue that Saunders violated its layoff procedure simply by retaining two less senior employees. *See Boynton*, 858 F.2d at 1188. Therefore, summary judgment was properly granted on the seniority issue.

### C.

A closer question is presented as to whether Saunders violated its layoff policy by failing to conduct a job search within the company prior to laying off Pachla. Section 11.321(c) of Saunders' personnel manual provides in relevant part:

*Layoff (02)—Lack of Available Work—* should be used only when business reversals require a temporary or permanent reduction in the work force.

1. *Exempt—Salaried*

Prior to the lay-off of any employee due to *Lack of Available Work*, first determine if another job or shift at a similar rate of pay is available at the same location. If not, the supervisor is to contact his/her manager for similar job openings at other locations within the region or area.

*Headquarters Supervisors*—contact the Personnel Department–Employment Section for openings in other departments or at other Company locations. (Emphasis in original.)

The district court held, "Any procedures relied upon in this manual regarding layoffs speaks [sic] only to situations involving lack of work." The court concluded that the manual did not address layoffs based upon economic necessity.

■ Our review of the personnel manual and the record evidence convinces us that a genuine issue of material fact is presented as to whether Pachla's layoff is subject to the job search requirement of Section 11.-321(c). Section 11.321 lists reasons for termination, and subsection (c) addresses layoffs due to lack of available work. Subsection (c) provides that layoff due to lack of available work "should be used only when *business reversals* require a temporary or permanent reduction in the work force." (Emphasis added.) The record does not reveal which reason for termination was given for Pachla's layoff, but the definition of layoff due to lack of available work is consistent with Saunders' assertion of economic necessity. If lack of available work properly describes the reason for Pachla's layoff, then the job search requirement is applicable to him as an exempt-salaried employee.

Thomas Dunn and Charles Donald Stevenson, Saunders' compensation and benefits manager, confirmed in their depositions that Saunders had a policy of searching inside the company for another position if an employee was laid off. Both Dunn and Stevenson testified in their depositions "that they were not aware of or could not recall what discussions may have been held by Saunders' top management in connection with relocating Pachla within the corporate structure following his lay-off." Appellee's Brief at 25. Pachla testified in his deposition that he was aware of Saunders' policy of conducting a job search within the company for laid off employees, and he testified that as regional operations manager, he followed this policy when discharging Dennis Paulski, a shop manager.

Viewing the evidence and inferences drawn therefrom in the light most favorable to Pachla, we conclude that genuine issues of material fact are presented as to whether the job search policy was applicable to Pachla's layoff and whether Saunders violated the policy in Pachla's case. Pachla has presented evidence from which a jury could reasonably find that Saunders violated its layoff policy by failing to conduct a job search within the company prior to laying him off. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Therefore, the district court erred by granting summary judgment for Saunders on the job search issue.

## D.

■ Another procedural issue asserted by Pachla in the district court concerned Saunders' compliance with a recall provision of the personnel manual. Section 11.-321(c)3 provides in part that "[p]rior to hiring a new employee for a specific classification, any qualified employee who has been on Lay–Off Status for less than six (6) months will be called back to work in the reverse order of their lay-off." In his brief in response to Saunders' motion for summary judgment, Pachla argued that Saunders violated the recall policy by not recalling him to replace Simmons as area operations manager when Simmons was terminated. Pachla did not raise this issue in his opening brief on appeal, but he did mention the issue in his reply brief. Generally, an issue raised for the first time in a reply brief will not be considered on appeal. *Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir.1986). However, in this case, Saunders raised the recall issue in its brief on appeal. "[W]here an appellee raises a [sic] argument not addressed by the appellant in its opening brief, the appellant may reply." *Bennett v. Tucker,* 827 F.2d 63, 70 n. 2 (7th Cir.1987). Therefore, we consider the recall issue properly raised in this appeal.

Saunders concedes that "it is clear that the only right which laid off employees had under Saunders' personnel policy was the right to be recalled to a position for which they were qualified prior to the hiring of a *new* employee." Appellee's Brief at 26 (emphasis in original). However, the right to be recalled does not apply where no new employee is hired but an existing employee is instead promoted, as occurred in this case. Moreover, Saunders argues that implementation of the recall policy requires evaluation of employee qualifications and such a decision is not subject to judicial review.

Viewing the evidence and inferences drawn therefrom in the light most favorable to Pachla, we conclude that a genuine issue of material fact exists as to whether Saunders complied with the recall policy in Pachla's case. The recall policy is clearly set forth in the personnel manual. Saunders confirmed its adoption of the recall policy in response to one of Pachla's interrogatories, and on appeal, Saunders has conceded that qualified laid off employees have the right to be recalled prior to the hiring of a new employee. Saunders also concedes that Pachla performed his duties as regional operations manager satisfactorily, from which one could infer that Pachla was qualified for the position of area operations manager. It is also undisputed that a lower-level manager was promoted and transferred to replace Simmons as area operations manager. Whether promoting an employee to a new position constitutes "hiring a new employee for a specific classification," thus invoking the recall policy, is an issue on which no evidence has been presented. Therefore, as we cannot say that Saunders is entitled to a judgment on the recall issue as a matter of law, the district court erred in granting summary judgment on this issue.

### III.

Accordingly, the district court's grant of summary judgment is AFFIRMED in part and REVERSED in part, and this case will be REMANDED to the district court for further proceedings consistent with this opinion.