931 F.2d 893
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert N. SCHRIEMER, et al., Plaintiffs-Appellants,
v.
Barton GREENBURG, et al., Defendants,
Ronald M. Barron, Ronald M. Barron and Associates, P.C.,
Defendants-Appellees.
 No. 90-1977.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1991.
 
 Before MERRITT, Chief Judge, KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This appeal arises out of the much litigated Diamond Mortgage Corp. ("Diamond")/A.J. Obie & Associates ("Obie") mortgage-backed securities fraud. Plaintiffs, investors in mortgage-backed notes, appeal the District Court's grant of summary judgment for defendants on allegations of 10b-5 fraud, aiding and abetting 10b-5 fraud, common law fraud and conspiracy. We affirm.
 
 FACTS
 
 2
 Defendants Ronald Barron and Ronald Barron & Associates, P.C., provided legal representation for the Diamond entities from the 1970's until 1986. Barron and his law firm often acted during this period as the personal attorney of Barton Greenburg, who was convicted of orchestrating the fraud using two companies he owned, Diamond, a mortgage broker, and Obie, a securities dealer. In addition, defendants drew up promissory notes and mortgages which were executed by Diamond employees. They also defended the Greenburg entities before various regulatory agencies.
 
 
 3
 A complete description of the fraudulent scheme can be found in Stone v. Mehlberg, 728 F.Supp. 1341, 1344-45 (W.D.Mich.1989). Diamond would solicit a homeowner to take out a loan secured by a mortgage on the homeowner's principal residence. However, Diamond typically did not lend the money. Instead, investors (through their purchase of "mortgage-backed securities" from Obie) usually funded the mortgage loans. As explained in Diamond/Obie's offering circular, an investor would be assigned one or more of Diamond's mortgages and promissory notes in exchange for his or her investment, and thereby become primary mortgagee on particular encumbered residences. After an assignment, Diamond typically acted as the investor's servicing agent on the note and mortgage. Obie marketed the mortgage-backed notes as safe, long-term investments, often to elderly or unsophisticated investors seeking extended, fixed rates of return.
 
 
 4
 The mortgage-backed note scheme occasionally operated as described in the Diamond/Obie offering circular. However, on many occasions, Diamond or Obie engaged in outright fraud. For example, Diamond would often solicit a loan and take a note, mortgage and sometimes brokerage fees from a homeowner, but never provide the homeowner with the agreed-upon loan proceeds.
 
 
 5
 Similarly, on the investment side, Obie frequently took an investor's funds and Diamond then failed to assign the investor a note and mortgage to back the investment. In other cases, Diamond did assign a note and mortgage, but the investor failed to realize any return because, as explained above, the mortgagor had not received any loan proceeds, and therefore refused to make payments to the investor. At still other times, Diamond assigned paying notes and mortgages to multiple investors. Although certain people associated with the Diamond entities have been convicted of criminal fraud, the District Court granted summary judgment for defendants on all charges because plaintiffs did not present sufficient evidence to link defendants to any culpable activity.
 
 ANALYSIS
 
 6
 Where there is no genuine issue of material fact, summary judgment is appropriate and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. On appeal, this Court reviews the District Court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. Pachla v. Saunders Sys., Inc., 899 F.2d 496, 498 (6th Cir.1990) (citations omitted). Although the party seeking summary judgment bears the initial burden of showing an absence of genuine issue of material fact, the nonmoving party cannot rest on its pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Rule 56(e) requires that the nonmoving party present "specific facts showing that there is a genuine issue for trial" when responding to a summary judgment motion. The "mere existence of a scintilla of evidence" supporting plaintiffs' position will not be sufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). There must exist evidence from which a jury could "reasonably" find for plaintiff. Id.
 
 
 7
 Moreover, in fraud cases the demonstration of the fraud must be clear and not ambiguous or conclusory. Under Fed.R.Civ.P. 9(b), "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Neither the pleadings nor the evidence proffered on summary judgment meet this standard. Plaintiffs may not simply rely on the proposition that defendants must have known of and participated in the fraud because they represented Greenburg for a number of years in connection with the drafting of mortgage documents. Plaintiffs' submission amounts to little more than this proposition.
 
 I. 10b-5 VIOLATION
 
 8
 Count I of plaintiffs' fourth amended complaint claimed that defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and S.E.C.Rule 10b-5, 17 C.F.R. 240.10b-5, promulgated thereunder. The District Court rejected this claim on the basis of plaintiffs' failure to identify any instance where defendants made or prepared untrue statements or made misleading omissions in connection with any securities activity conducted by any of the Diamond entities.
 
 
 9
 Basically, Diamond entities conducted business in two distinct spheres of operation: transactions involving 1) borrowers who sought funds from the Diamond entities who granted mortgages on their homes; and 2) investors who purchased these mortgages as investments. The District Court found that defendants' representation focused primarily on the mortgage solicitation side of the business and that defendants did not prepare or review the Diamond entities' offering circulars or promotional materials.
 
 
 10
 However, defendants apparently made some modifications to the offering prospectus during 1980-81 as requested by the Michigan Corporations and Securities Bureau. The District Court nonetheless dismissed this "primary" 10b-5 claim on the basis that plaintiffs failed to provide the court with a copy of the alleged document and failed to point out to the court specifically what false statements or omissions were contained therein.
 
 
 11
 Although plaintiffs contend that the modifications that defendants made to the offering circular contained material misrepresentations, there is simply no evidence from which a jury could "reasonably" infer that defendants committed 10b-5 fraud. The nonmoving party cannot simply rest on its pleadings. Celotex, 477 U.S. at 324. We agree with the District Court's grant of summary judgment as to the 10b-5 claim.
 
 II. AIDING AND ABETTING A 10b-5 VIOLATION
 
 12
 The District Court also dismissed Count II of plaintiffs' fourth amended complaint, the aiding and abetting charge. In order to succeed under this liability theory, plaintiffs must prove that some other party has committed a 10b-5 violation, that defendant had "general awareness that his role was part of an overall activity that is improper," and that defendant "knowingly and substantially assisted the violation." Moore v. Fenex, Inc., 809 F.2d 297, 303 (6th Cir.) (citations omitted), cert. denied, 483 U.S. 1006 (1987).
 
 
 13
 As to the first element of this allegation, the District Court determined that the Diamond entities' activities amounted to numerous 10b-5 violations in their misrepresentations about its solvency and the secured nature of Diamond "first mortgage notes" and Commerce Mortgage holdings. However, the District Court further found that plaintiffs did not present proof sufficient to survive summary judgment as to the "general awareness" and "knowing" assistance prongs of the aiding and abetting charge.
 
 
 14
 Reviewing the evidence in a manner most favorable to the nonmoving party, plaintiffs seem to have presented nothing more than perhaps a "scintilla" of evidence that defendants were aware of, or in any way knowingly assisted, the fraudulent scheme. Based on the evidence before this Court, it seems that defendants principally drafted mortgage documents for Diamond. We are not persuaded by plaintiffs' contentions that the affidavit testimony of Diamond employees Mitchell and Lupovich, and the deposition testimony of Wellington, show that defendants knowingly assisted the fraud. As to Mitchell and Lupovich's general allegations that defendants knew of the fraud Greenburg and others were perpetrating, the District Court correctly disregarded (pursuant to Fed.R.Civ.P. 56(e)) much of these employees' affidavit testimony as hearsay not within their personal knowledge. Plaintiffs' strongest proof was the deposition testimony of Paul Wellington, who worked at Diamond and told defendant Barron that a customer had complained that Diamond had taken a mortgage on the customer's house, sold it to an Obie investor and had never disbursed the loan proceeds. Absent other proof, a jury could not have "reasonably" found, based on this isolated incident, that Barron or his firm knew about Greenburg's fraudulent activities and therefore could be said to be aiding and abetting the fraudulent activity.
 
 III. COMMON LAW FRAUD
 
 15
 Plaintiffs also alleged that defendants engaged in common law fraud. Again, however, we agree with the District Court that plaintiffs present insufficient evidence to survive summary judgment. In order to constitute actionable fraud in Michigan, a court must find
 
 
 16
 (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that [plaintiff] thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.
 
 
 17
 United States Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 313 N.W.2d 77, 82 (1981) (citation omitted).
 
 
 18
 Regarding this claim, plaintiffs present no "specific facts" showing that there is a genuine issue for trial as to this claim, specifically that defendants made knowing or reckless misrepresentations. Simply put, plaintiffs do not begin to make out a case of common law fraud as to these defendants under Michigan law.
 
 IV. COMMON LAW CONSPIRACY
 
 19
 The District Court also dismissed Count V of the second amended complaint, which alleged defendants engaged in common law conspiracy. In Michigan, a "conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." Fenestra Inc. v. Gulf American Land Corp., 377 Mich. 565, 141 N.W.2d 36, 48 (1966) (citation omitted). The reason given by the District Court for dismissing this claim is that plaintiffs pointed to no fact that suggests any express, implied, or ratified combination between defendants and any other party engaging in criminal conduct. Furthermore, in order to recover for a civil conspiracy claim, damages must also be specifically alleged, id. at 49, which plaintiffs failed to do in this case.
 
 
 20
 As with their common law fraud claim, plaintiffs did not make specific pleadings in response to defendants' motion for summary judgment. Without even a "scintilla" of evidence in the record tending to prove a conspiracy involving defendants, the District Court did not err in granting summary judgment as to this claim.
 
 
 21
 Accordingly, we AFFIRM the District Court's grant of summary judgment for defendants on all counts.